IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

BEST BEACH GETAWAYS, LLC,

        Plaintiff,

v.

TSYS MERCHANT SOLUTIONS, LLC,

        Defendant.

CASE NO. 1:20-cv-01962-LTB

**DEFENDANT'S BRIEF IN OPPOSITION TO
PLAINTIFF'S PETITION FOR PRELIMINARY INJUNCTION**

Defendant TSYS Merchant Solutions, LLC ("TSYS") submits this Brief in Opposition to Plaintiff Best Beach Getaways, LLC's ("Best Beach") Petition for Preliminary Injunction (the "Petition"). For the reasons set forth below, Best Beach's Petition should be denied.

**INTRODUCTION**

Since COVID-19 first shook the United States earlier this year, TSYS has been engaged in ongoing reviews of the risks presented by its merchant customers like Best Beach, whose vacation rental business is particularly vulnerable to the pandemic. Unhappy with the results of TSYS's ongoing analysis, Best Beach asks this Court for the extraordinary remedy of an injunction. But, in doing so, Best Beach does not ask the Court to simply preserve the status quo. Instead, it asks the Court to step in, force an immediate stop to TSYS's ongoing risk assessment, and strip TSYS of the protections of the reserve account it established pursuant to its express contractual right.

Best Beach's brief contains almost no legal argument and does not even cite relevant Colorado authorities for the elements of its claims. Best Beach seems to argue that TSYS's

calculation of the risk presented by Best Beach's account was wrong and the Court should not only substitute its own judgment for TSYS's risk analysis, but that the Court should also eliminate the reserve account entirely, leaving TSYS with no security at all.  But mere disagreement with the result of TSYS's business assessment does not establish bad faith and does not warrant judicial intervention.  Rather, Best Beach must show that the process by which TSYS's decision was reached was either dishonest or outside of accepted industry practices.  Best Beach does not attempt to make either showing.  Nor can it, as the evidence presented establishes that TSYS's risk assessment has been thorough, ongoing, and subject to management input and review.

Best Beach's claims of imminent harm also ring hollow given that TSYS's ongoing review of Best Beach's account most recently resulted in the release of the funds hold and return of approximately $1 million in reserve funds to Best Beach.  As a result, its Petition should be denied.

## FACTUAL BACKGROUND

Best Beach is a vacation rental management company specializing in beach rentals in and around the Florida Panhandle. Am. Compl., at ¶ 8.  TSYS is a payment processor that assists Best Beach with accepting credit and debit card payments from customers pursuant to the Agreement. *See* Declaration of Mark Fenton ("Fenton Decl."), at ¶ 3.  As a payment processor, TSYS acts as the mediator between Best Beach and Visa and Mastercard, the issuers of credit cards. *Id.*

Customers interested in renting properties through Best Beach must first advance a $450 deposit for their stay and, 30 days prior to the rental, pay Best Beach any outstanding rent and fees in excess of the initial deposit. Am. Compl., at ¶ 10.  Many customers pay with a credit card, and the money is sent from the credit card company to TSYS for processing. *Id.* at ¶¶ 13-14.  TSYS transfers the funds, less any applicable service fees, to Best Beach.  Once a vacation is completed,

Best Beach transfers the funds to the property owner, less its fees. *Id.* at ¶ 15.

Pursuant to the Merchant Card Processing Agreement (the "Agreement"), TSYS and Best Beach must abide by card issuers' "Operating Rules," which govern all aspects of credit and debit card transactions, including chargebacks. Fenton Decl., at ¶ 7, Ex. O. Not to be confused with a refund, where a customer asks *Best Beach* for their money back, a chargeback occurs when a customer asks the *credit card company* for their money back through the reversal of a charge. *Id.* When a customer requests a chargeback, the Operating Rules require TSYS to fund the return of the customer's money almost immediately, regardless of whether Best Beach has sufficient funds in its account to cover the chargeback. This puts TSYS at considerable risk. *Id.* at ¶ 8.

To mitigate this risk, the parties agreed that TSYS would have "sole and absolute discretion" to secure itself by establishing a reserve account. *See* Ex. O, at § 13. Specifically, the Agreement states: "Merchant Bank may deposit by deducting from any payment due to Merchant or from any funds in the Settlement Account or any other deposit account of Merchant, into an account maintained by Merchant Bank . . . (the 'Reserve Account'), initially or at any time in the future as requested by Bank, ***sums sufficient to satisfy Merchant's current and/or future obligations as determined by Bank in its sole and absolute discretion***." *Id.* (emphasis added).

In exercising its "sole and absolute discretion," TSYS regularly monitors and reviews its merchants' account activity to assess any resulting financial exposure. *See* Declaration of Heidi Keryan ("Keryan Decl."), at ¶ 7. This type of periodic review is common at TSYS and generally includes review of a merchant's processing volume, refunds and chargebacks levels, customer complaints, and whether the merchant is in an industry more vulnerable to risk and potentially unpredictable chargeback levels. *See* Fenton Decl., at ¶ 29.

In or around March 2020, amid the global COVID-19 pandemic and the government's suspension of short-term vacation rentals in Florida, TSYS took additional measures to monitor merchant accounts that might be particularly susceptible to economic risks, like Best Beach's. Keryan Decl., at ¶ 8. The information available to TSYS indicated that the volume and frequency of Best Beach's refunds and chargebacks had increased significantly while its processing volume had decreased. *Id.* at ¶¶ 12-13. After careful consideration of the risk this posed to TSYS, on April 14, 2020, TSYS exercised its contractual discretion to establish a reserve account and funded it by placing a temporary hold on Best Beach's credit card processing funds. *Id.* at ¶ 13.

TSYS's decision was not final. Rather, it was part of an ongoing process that involved the continuous monitoring and assessment of Best Beach's account and the evolving and uncertain situation resulting from the COVID-19 pandemic. *Id.* at ¶ 14. TSYS therefore requested additional information from Best Beach that would allow TSYS to further assess its financial risk and make any corresponding adjustments to the reserve account. *Id.*

For example, when Best Beach notified TSYS that Florida's short-term rental ban had been lifted, TSYS removed the funds hold. *Id.* at ¶ 17. Nevertheless, TSYS continued to monitor Best Beach's account. *Id.* at ¶ 18. Shortly thereafter, Best Beach's bookings spiked far in excess of historical norms and chargeback levels remained elevated as COVID-19 continued to wreak havoc on Florida. *Id.* at ¶¶ 19-20. TSYS determined, with the review and approval of senior management, that its risk exposure had increased and more information was needed to more fully assess its risk. *Id.* at ¶ 20. On June 22, 2020, after review of Best Beach's updated information, as well as research and consideration of other relevant information, TSYS again revised its risk estimate and re-implemented the funds hold, this time with a target of $4 million. *Id.* at ¶¶ 22-26.

Again, despite implementing a funds hold, TSYS continued its ongoing process of assessing incoming data and monitoring Best Beach's account and business. *Id.* at ¶ 27. As part of this effort, TSYS contacted Best Beach on July 6, 2020 seeking additional information and documents to assist TSYS with its continuing assessment. *Id.* at ¶ 28. After nearly two weeks, Best Beach supplied TSYS with the requested information on July 24, 2020. *Id.* at ¶ 31. Upon a thorough review of the information, TSYS determined on July 31, 2020 to remove the 100% funds hold and release $1 million from Best Beach's reserve account. *Id.* at ¶ 32. TSYS did not release the entire reserve account on July 31, 2020, however, because it determined that it still needed to review additional information as part of its ongoing assessment. *Id.* at ¶ 33. That same day, TSYS asked Best Beach for information including reservation data for the balance of July and August 2020, which had not yet been provided, and updated data on refunds and chargebacks. *Id.* TSYS requested this additional information to further evaluate its risk with respect to Best Beach's account, with the possibility that further funds could be released from the reserve account. Best Beach provided that information to TSYS less that one week ago, on July 31, 2020, and TSYS is currently reviewing it as part of its ongoing risk evaluation. *Id.*

Best Beach now asks the Court for a preliminary injunction. It does not ask the Court to preserve the status quo. Rather, it asks the Court to upend it by halting TSYS's ongoing review of Best Beach's merchant account and stripping TSYS of the full protection of the reserve account established after careful exercise of its express contractual discretion to do so.

## **ARGUMENT AND CITATION OF AUTHORITIES**

To obtain the "extraordinary remedy" of a preliminary injunction, the movant must establish: (1) a substantial likelihood of success on the merits; (2) a threat of irreparable harm if

- 5 -

the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest. *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013). Failure to satisfy any one of the four factors is fatal. *Id.* And where, as here, the movant seeks mandatory injunctive relief that would upend the status quo—a "specifically disfavored" preliminary injunction—it must demonstrate that the factors "weigh heavily and compellingly" in its favor. *Fund. Church of Jesus Christ of Latter–Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012). Best Beach fails to demonstrate how any of the four factors weighs heavily in its favor.

**I.      Best Beach Has Not Demonstrated a Substantial Likelihood of Success on the Merits.**

Best Beach does not lay out a single element of any of the claims it asserts against TSYS and makes only a bare and conclusory assertion that it is likely to succeed on the merits, without any supporting legal analysis. This is not sufficient for the Court to grant the extraordinary remedy of injunctive relief.

**A.      Best Beach's Tortious Interference and Deceptive Trade Practices Claims are Not Viable.**

As an initial matter, Best Beach's claims for tortious interference with a contract are not substantially likely to succeed on the merits because Best Beach expressly agreed to limit TSYS's duties to those set forth in the Agreement. Thus, TSYS does not owe Best Beach any extra-contractual duties. *See* Ex. O, at § 17.2; *see also* TSYS's Mot. to Dismiss, ECF 39, at 10-14. Best Beach's claim under the Florida TPA is not substantially likely to succeed on the merits because the Agreement provides that Colorado law govern, barring liability under a Florida statute. Even if that were not the case, Best Beach's mere conclusory allegations fail to allege any unfair acts or how such alleged acts offended public policy, as required to state a claim. *See* Ex. O, at § 19; *see*

*also* ECF 39, at 14-16. Best Beach's Colorado Consumer Protection Act claim similarly fails as Best Beach does not plead with particularity the required elements, including notably, any deceptive or unfair act or significant impact on the public. *See Hansen v. Auto-Owners Ins. Co.*, No. 09-CV-02736-CMA-BNB, 2010 WL 749820, at *3 (D. Colo. Mar. 4, 2010) (finding CCPA claims must meet heightened pleading standard and dismissing plaintiff's claim for making "vague and conclusory statements"); *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142 (Colo. 2003) ("When a transaction is no more than a private dispute, as it is here, it may be more difficult to show that the public has in interest in the subject matter.").

### B. Best Beach's Breach of Implied Duty of Good Faith and Fair Dealing Claim is Not Likely to Prevail.

This leaves Best Beach's claim for breach of the implied duty of good faith and fair dealing, which is also not likely to succeed on the merits. The burden of establishing a violation of the implied duty falls on the plaintiff. *Monroe Prop., LLC v. Bachelor Gulch Resort, LLC*, 374 F. Supp. 2d 914, 921–22 (D. Colo. 2005). Here, Best Beach has failed to carry that burden, as it has not made a single legal argument concerning how the duty was breached and has failed even to cite the legal standard to establish such a breach, let alone a single case in support of its claim.

At best, Best Beach's Petition can be read to argue that TSYS breached the implied duty of good faith because Best Beach believes that TSYS's reserve is not sufficiently proportional to the risk posed by Best Beach's account. In other words, Best Beach disagrees with the results of TSYS's ongoing risk assessment and asks this Court to step in, take any further assessment out of TSYS's hands and place it into the Court's. But Best Beach fails to cite any authority for the proposition that mere disagreement with the results of TSYS's business decision is grounds for judicial intervention. Nor can it, because TSYS's assessment of the risk posed by Best Beach's

account is not an exact science, but rather an evaluation requiring TSYS to exercise judgment based on the information available to it in the ordinary course of its business.

Courts have recognized that discretionary business decisions like TSYS's are "virtually unreviewable" under the bad faith standard and have thus refused to second guess the decision, focusing instead on decision-making *process*.[1]  *See, e.g.*, *Vigoro Indus., Inc. v. Crisp*, 82 F.3d 785, 791 (8th Cir. 1996) ("[w]hen a contract term leaves a decision to the discretion of one party, that decision is virtually unreviewable"); *Fid. & Deposit Co. v. C.E. Hall Constr., Inc.*, 627 F. App'x 793, 794-96 (11th Cir. 2015) (affirming finding of no evidence of bad faith where contract granted discretion to defendant and plaintiff merely "disagree[d] with the results of the investigation"); *see also Chimney Rock Pub. Power Dist. v. Tri-State Generation & Transmission Ass'n, Inc.*, 2014 WL 788057, at *3–4 (D. Colo. Feb. 27, 2014) (finding that plaintiffs "misinterpret the purpose of the implied covenant, which is not to ensure fairness to all parties in a contract's outcome, but to ensure that no party uses contractual discretion in a way that could not reasonably have been anticipated at the time of contracting"); *Nguyen v. Lumbermens Mut. Cas. Co.*, 583 S.E.2d 220, 223 (Ga. App. 2003) ("Where a decision is left to the discretion of a designated entity, the question is not whether it was in fact erroneous, but whether it was in bad faith, arbitrary or capricious so as to amount to an abuse of that discretion.").  That leaves Best Beach with no claim premised on

---

[1] Indeed, courts have denied similar claims that a payment processor acted in bad faith in exercising its discretion or otherwise taking action pursuant to an express right in an agreement. *See, e.g.*, *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1220-21 (N.D. Cal. 2011) (finding no bad faith when processor placed a hold on plaintiffs' funds "for 180 days when not reasonably needed to protect against the risk of liability" because the contract gave processor "sole discretion" to place accounts on hold); *Costoso v. Bank of Am., N.A.*, 74 F. Supp. 3d 558, 572 (E.D.N.Y. 2015) (finding no bad faith when bank processed debit transactions on customers' bank accounts that were initiated by payday lenders because the ability to do so was an express term of the agreement).

any alleged "error" in TSYS's determination. Rather, Best Beach's only cognizable challenge is that TSYS assessed Best Beach's risk in bad faith, *i.e.*, dishonestly and outside of accepted commercial practices. *McDonald v. Zions First Nat'l Bank, N.A.*, 348 P.3d 957, 967 (Colo. App. 2015). Best Beach fails to address these issues, dooming any chance of success on its claim.

Nevertheless, TSYS has shown that, in establishing and setting reserves for Best Beach, TSYS engaged in a thorough and honest decision-making process that conformed to its well-accepted business practices. TSYS conducted in-depth examinations of the information available to it, exercised its business judgment of the risk presented by Best Beach's account based on that information, and sought review and approval of its analysis from multiple layers of management. *See* Fenton Decl. at ¶¶ 25-35; Keryan Decl., at ¶¶ 26, 32. TSYS continued to review the risk posed by Best Beach's account as the facts and circumstances shifted and made corresponding adjustments to Best Beach's reserve account, often making changes in Best Beach's favor. *See* Fenton Decl., at ¶¶ 28-30; Keryan Decl., at ¶¶ 17, 32. In light of this evidence, Best Beach simply cannot show a substantial likelihood of success on the merits of its bad faith claim.

Finally, Best Beach is not entitled to an injunction because it has unclean hands given its own breaches of the Agreement. *Springfield Holding Co. LLC v. Stone*, 335 F. App'x 699, 706–07 (10th Cir. 2009) ("equity will not aid a party whose conduct has been unlawful, unconscionable, or inequitable"); *Ajay Sports, Inc. v. Casazza*, 1 P.3d 267, 276 (Colo. App. 2000) (holding that a court will not consider a request for equitable relief when plaintiff's acts "offend the sense of equity to which he or she appeals"). Pursuant to the Agreement, both TSYS and Best Beach are bound by the Operating Rules of the credit card issuers. *See* Fenton Decl., at ¶ 6. While the Operating Rules do not dictate what kind of refund policies merchants must have, they do require

merchants to establish some sort of refund policy, and in order for card issuers to find in favor of the merchant in a chargeback dispute, the refund policy must be clearly disclosed. *Id.* at ¶ 11. Both Visa and Mastercard require that for card-absent transactions, a merchant's cancellation policy must not be disclosed solely in a link to a separate web page. *Id.* at ¶¶ 16-17.

As a payment processor, TSYS processes Best Beach's Visa and Mastercard credit card transactions and has access to data on the results of any challenges that Best Beach may make to the validity of customer chargebacks. *Id.* at ¶ 21. Best Beach's chargebacks increased dramatically in March 2020 and has remained at an elevated level. *Id.* ¶ 22. Best Beach has challenged a number of those chargebacks. Visa and Mastercard, however, have ruled against Best Beach and in favor of the cardholders on the ground that Best Beach's disclosure of its no-cancellation policy did not comply with the Operating Rules. *Id.* ¶ 23. Best Beach cannot seek the equitable relief of an injunction when it has failed to comply with the terms of the parties' Agreement.

## II. Best Beach Has Not Demonstrated That It Will Suffer Irreparable Harm if Its Petition is Denied.

A party seeking preliminary injunctive relief must also establish that the relief is necessary to prevent an irreparable injury. In the Tenth Circuit, a plaintiff suffers irreparable injury when there exists no effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Awad v. Ziriax*, 670 F.3d 1111, 1131 (10th Cir. 2012). A sufficient showing of irreparable harm requires that the threatened injury be "certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).

Best Beach has failed to put forth any evidence showing that there is a clear and present imminent risk of Best Beach going out of business. Such a claim lacked merit at the filing of the Petition because after weeks of claiming that it was in danger of insolvency, Best Beach

nevertheless was able to continue operations, shifting its alleged doomsday forward with each filing.  *Compare* ECF 9 at 9 (N.D. Fla.) (stating that it is a "near-certainty" that it will not be able to meet August 15, 2020 obligations) *with* Petition, at 9-10 (stating that it will be able to make its August 15, 2020 obligations with a positive balance thereafter).  Now, given TSYS's release of its hold and return of $1 million in previously held funds on July 31, 2020, Best Beach has no credible claim that doomsday is imminent.  *See PDC Pharmacy Colorado, Inc. v. McKesson Corp.*, No. 13-CV-01663-MSK-BNB, 2013 WL 3242836, at *2 (D. Colo. June 26, 2013) (plaintiff's assertions that it would be forced out of business were "conclusory" and "implausible" because it is "extremely unlikely" that loss of a portion of  revenue would cause a complete shutdown of operations).  That conclusion is even stronger after Best Beach disclosed that its E*Trade account contains $2 million in additional liquidity that Best Beach can use to pay its bills.

As if the release of the hold and return of $1 million was not enough of a cash influx, Best Beach also acknowledges that it has options that would allow it to remain a going concern, including accessing short-term financing, turning to the credit market, or using later-received deposits to meet its previously-accrued obligations.  *See* Petition, at 9.  When alternative solutions for adequate remedies exist, there can be no plausible claim that Best Beach will suffer irreparable harm without an injunction.  *See, e.g.*, *XIP Techs., LLC v. Ascend Glob. Servs., LLC*, 253 So. 3d 1183, 1186 (Fla. Dist. Ct. App. 2018) (reversing trial court's finding of irreparable harm when evidence showed that plaintiff was able to remain in business during the lawsuit because plaintiff "obtained finances to continue operating" through personal loans from the company's CEO).  That Best Beach might find these options unpalatable is irrelevant.

Simply put, Best Beach has not established that TSYS's actions "pose an imminent and

actual existential business threat." *Email on Acid, LLC v. 250ok, Inc*., 2020 WL 364562, at *5 (D. Colo. Jan. 22, 2020).  Best Beach's bare allegation of an imminent financial shortfall, devoid of any evidentiary or factual support in the record, is too conclusory and speculative to satisfy the rigorous preliminary injunction standard.  *See id.* (declining to find irreparable harm arising out of claim that movant would go out of business without injunctive relief because the movant "offer[ed] no facts in support of that conclusory opinion."); *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

### III. Best Beach Has Not Demonstrated that the Balance of Equities Weighs in Favor of an Injunction and that the Injunction Would Not Be Adverse to the Public Interest.

Even if Best Beach could show a substantial likelihood of success on the merits and irreparable harm (and it cannot), Best Beach would still not be entitled to a preliminary injunction because, when balancing the equities among the parties, the threatened injury to Best Beach does not outweigh the potential harm to TSYS if the injunction is granted.  The mandatory injunction Best Beach seeks would upend the status quo by stripping TSYS of its express contractual right to conduct an ongoing assessment of the risk posed by Best Beach's merchant account.  *See Sierra Club*, 539 F. App'x at 888.  Additionally, it would be adverse to the public interest for the Court to limit or worse, remove, TSYS's express contractual right to secure itself against risks posed by its merchants' account activity.  Such a result will undoubtedly send waves throughout the processing industry and could result in increased processing costs for all merchants or additional hurdles to even obtain processing assistance, among other unintended consequences.  Best Beach has failed to satisfy these final prongs, which are fatal to its Petition.

Respectfully submitted this 6th day of August, 2020.

By: */s/ David E. Meadows*
John S. Gibbs, III
TROUTMAN PEPPER HAMILTON SANDERS LLP
David E. Meadows
Alexandra S. Peurach
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
Telephone:	404.885.3000
Facsimile:	404.885.3900

*Attorneys for Defendant TSYS Merchant Services, LLC*

- 14 -

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 6, 2020 a true and correct copy of the foregoing *Defendant TSYS Merchant Solutions, LLC's Brief In Opposition to Best Beach Getaways' Petition for Preliminary Injunction* was served with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants.

By: */s/ David E. Meadows*
David E. Meadows
TROUTMAN PEPPER HAMILTON SANDERS LLP