**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

BEST BEACH GETAWAYS, LLC,

Plaintiff,                                              Case No. 1:20-cv-01962-NRN

v.

TSYS MERCHANT SOLUTIONS, LLC,

Defendant.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff, BEST BEACH GETAWAYS, LLC, through undersigned counsel and pursuant to the Federal Rules of Civil Procedure and the Local Rules of this Court, provides the following arguments and authorities in opposition to Defendant, TSYS MERCHANT SOLUTIONS, LLC'S, Partial Motion to Dismiss Plaintiff's Amended Complaint.

**I.   Background**

Best Beach Getaways' amended complaint sues TSYS in six counts: 1.) Tortious Interference with Contract – Best Beach Getaways' Contracts with Property Owners; 2.) Tortious Interference with Contract – Best Beach Getaways' Contracts with Depositors; 3.) Violation of the Florida Deceptive and Unfair Trade Practices Act; 4.) Breach of Implied Covenant of Good Faith and Fair Dealing; 5.) Violation of Colorado Consumer Practices Act; and 6.) Petition for Emergency Preliminary Injunction.

This opposition addresses the two distinct categories of the Merchant's motion: 1.) Best Beach Getaways Tortious Interference Claims, and 2.) Best Beach Getaways

1

Colorado and Florida Consumer Protection Claims.

## II. The Court Should Abate, Rather than Dismiss, Plaintiff's Tortious Interference Claims

As a result of Best Beach Getaways' efforts to seek judicial relief against TSYS, TSYS released about $2.5 million of wrongfully withheld funds. The two releases that totaled this sum were not made in the ordinary course of TSYS's operations. Instead, the timing of the releases tactically correlated to milestone events that were scheduled to occur in this case. The total amount of the releases was not derived from any analysis of risk but was simply the amount TSYS thought necessary to undermine Best Beach Getaways' chances of obtaining temporary injunctive relief; that is, the release was calculated to leave Best Beach Getaways with just enough cash flow from its other operations to permit TSYS to colorably argue that Best Beach Getaways was no longer facing the immediate risk of failing as a going concern.

Absent these tactically timed and calculated releases, and assuming temporary injunctive relief might not have been granted, Best Beach Getaways would already have notified its property owner clients and its reservation-holding guests that it could not deliver on its commitments. The property owners would already have cancelled their agreements and the reservation-holding guests would all have demanded refunds. (Precisely the risk TSYS claims to be attempting to avoid.)  Best Beach Getaways' relationships with both groups of obligees would already be irretrievably broken.

Best Beach Getaways asks that its tortious interference claims be abated rather than dismissed. At present, TSYS makes no commitment to release further funds at any specific future time, or in any specific amount, even though the parties have agreed to

terminate their relationship.[1] So long as TSYS continues to hold funds that far exceed any conceivable risk to TSYS, Best Beach Getaways' ability to meet its commitments will remain threatened. Over the next few months, the funds being held will constitute an ever larger share of Best Beach Getaways' cash flow, as the Florida Panhandle tourist season is now ending.[2] It would be inequitable to require Best Beach Getaways to re-file its tortious interference claims only after TSYS forces Best Beach Getaways over the edge of a fiscal cliff.

### III. Plaintiff's Florida and Colorado Consumer Protection Claims

#### a. Florida Consumer Protection Claim

Defendant alleges in its motion that Best Beach Getaways cannot maintain its claim under the FDUTPA because the parties selected Colorado law to govern the Agreement. Several decisions undermine TSYS's argument.

The subject contract provision is as follows:

> 19. **COLORADO LAW; JURISDICTION; VENUE**. Merchant's offer to enter into this Merchant Agreement is made in Boulder Colorado and accepted by Bank in Columbus, Georgia; this Merchant Agreement shall be performed by Merchant in Boulder, Colorado and governed by Colorado law, excluding its conflict of laws rules. Merchant and Guarantor agree to bring any claim or other litigation arising from or relating to this Merchant Agreement that it or they may have in the county and district courts in and for Boulder County, Colorado, and Merchant and any Guarantor irrevocably and unconditionally submit to the jurisdiction of such courts with respect to any such litigation.

---

[1] After the prior hearing before this Court, TSYS gave notice of termination of the parties' relationship. TSYS will no longer process Best Beach Getaways' credit card purchases after October 19, 2020. Even so, TSYS does not disclose how long thereafter it plans to hold Best Beach Getaways' funds.

[2] To a very large extent, the tourist season in the Panhandle region of Florida, where the vast majority of the properties served by Best Beach Getaways are located, is the opposite of the more populous parts of the state, because the Panhandle is much colder during the winter months.

TSYS's arguments relating to paragraph 19 of the contract appear to conflate the first sentence of the paragraph, which is a choice of law provision, with the second sentence, which is a forum selection clause. On its face, the forum selection clause is much broader than the choice of law clause. Specifically, while the "agreement" is "governed by Colorado law," it is "any claim or other litigation arising from or relating to" the agreement that must be brought in Colorado. Where courts have considered such clauses in tandem, they have found that the narrower choice of law provision compels local consideration of a narrower collection of claims than does the broader forum selection clause. Generally, a choice of law clause that is limited to "the agreement" itself might subject contract claims to adjudication under local law, even where the broader forum selection clause might require all claims "relating to" the agreement, including statutory and tort claims, to be brought locally. See *Warman v. Am. Nat'l Standards Inst.*, 2016 WL 3676681, *3 (S.D. N.Y. 2016) ("a choice-of law provision indicating only that an *agreement* will be governed by New York law will not bind the parties for non-contractual causes of action") (emphasis original), citing *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) and *Plymack v. Copley Pharm., Inc.,* 1995 WL 606272, *5 (S.D. N.Y. 1995); *Klock v. Lehman Bros. Kuhn Loeb Inc.,* 584 F. Supp. 210, 215 (S.D. N.Y. 1984); *Ecommission Sols., LLC v. CTS Holdings, Inc.*, 2016 WL 6901318, *5 (S.D. N.Y. 2016) (choice of law portion of the clause provided "[t]his Agreement shall be governed by the laws of the State of Texas and any action arising out of this Agreement shall have venue in Collin County, Texas" did not govern contribution claim, as choice of law provision limited to "agreement" applies only to contract claims).

Very recently, the court in *FinancialApps, LLC v. Envestnet, Inc.*, 2020 WL 3640063, (D. Del. July 6, 2020), <u>rep and rec adopted in part, rejected in part,</u> 2020 WL 5015447 (D. Del. Aug. 25, 2020), and <u>rep and rec adopted in part, rejected in part sub nom.</u> 2020 WL 5422408 (D. Del. Sept. 10, 2020), surveyed numerous Delaware cases and concluded that:

> choice of law provisions that explicitly apply to "any claim arising out of or relating to" a contract are "broad" enough to cover quasi-contract and tort claims arising from the contractual agreement—but that "narrow" choice of law provisions that do not include such expansive language apply only to claims arising directly from the contract itself. Here, the choice of law provision in the MSA is surely a "narrow" one, in that on its face, it notes only that "[t]his Agreement" will be governed by and construed under the law of Delaware—not that any matters "arising out of or relating to the Agreement" will be governed by Delaware law.

*FinancialApps,* 2020 WL 3640063 at *5 (internal citations omitted).

The *FinancialApps* court further noted that application of the rule differentiating between broad and narrow choice of law clauses was especially appropriate in the case before it:

> This is only underscored by the fact that the choice of law provision is much narrower than the forum selection clause provision found in the next sentence of the MSA, as the latter states that jurisdiction or venue for any lawsuit or proceeding "arising out of or related to" the Agreement would be found in Delaware courts. The parties knew how to craft language that would broadly apply to any claims "arising out of or related to" the MSA, but did not do so with respect to the choice of law provision.

*FinancialApps,* 2020 WL 3640063 at n.5. <u>Accord</u>, *Huddleston v. John Christner Trucking, LLC*, 2017 WL 4310348, *9 (E.D. Cal. 2017) (while forum selection clause broadly applying to "any claim or dispute arising from or in connection with this agreement" required transfer to Oklahoma, California statutory claims would survive transfer because much narrower choice of law provision, being limited to the "agreement," would not apply

5

to them); *LaCross v. Knight Transportation, Inc.*, 95 F. Supp. 3d 1199, 1206 n.4 (C.D. Cal. 2015); *Innovative BioDefense, Inc. v. VSP Techs., Inc.*, 2013 WL 3389008, *5 (S.D. N.Y. 2013); *Republic Bus. Credit, LLC v. Greystone & Co.*, 2014 WL 2625170, *3 (E.D. La. 2014); *Moore v. Lender Processing Servs., Inc.*, 2012 WL 12906123, *2 (C.D. Cal. 2012); *Sedona Corp. v. Ladenburg Thalmann & Co.*, 2005 WL 1902780, *15 (S.D. N.Y. 2005); *Rice v. Scudder Kemper Investments, Inc.,* 2003 WL 21961010 (S.D. N.Y. 2003), *aff'd sub nom. Rice v. Wartsila NSD Power Dev., Inc.,* 183 Fed.Appx. 147 (2d Cir. 2006); *Warman v. Am. Nat'l Standards Inst.*, 2016 WL 3676681, *3 (S.D. N.Y. 2016).

TSYS's argument that the choice of law provision applies to bar Plaintiff's Florida claim is simply unsound. While the broad forum selection clause may require adjudication of all of the claims in Colorado, the narrow choice of law clause does not require adjudication of all of the claims under Colorado law. This result is consistent with the ruling of the Honorable Mark E. Walker, Chief United States District Judge for the Northern District of Florida, when he transferred the instant action to this Court. While Judge Walker found that the broad forum selection clause required transfer of Plaintiff's FDUTPA claim, he had no reservations that this Court was not well-positioned to adjudicate Plaintiffs rights under FDUTPA. See Order entered July 2, 2020, No. Dist. Fla. case no. 5:20-cv-00163-MW-MJF Doc 26, at 7.

It cannot be disputed that Florida has the most significant relationship to a claim arising under the Florida consumer fraud statute. Florida's law is designed to advance the state's public policy protections for victims just like Best Beach Getaways, a company that manages more than 450 Florida properties, is headquartered in Florida, and impacts the lives of an impressive array of Florida-based vendors, employees, and taxing districts.

### *b. Colorado Consumer Protection Claim*

The required elements of a Colorado Consumer Protection Claim include: 1.) unfair or deceptive trade practice, 2.) in the course of business, 3.) public impact to actual or potential consumers, 4.) injury in fact, and 5.) Defendant caused injury to Plaintiff. *Shekarchian v. Maxx Auto Recovery, Inc.*, 2019 WL 1830337, *4 (Colo. App., 2019).

Defendant contends that Best Beach Getaways cannot prove a public impact to actual or potential consumers, citing *Curragh Queensland Min. Ltd. v. Dresser Indus., Inc.*, 55 P.3d 235, 241 (Colo. App. 2002), *as modified on denial of reh'g* (June 13, 2002). The focus of the court in *Curragh Queensland Min. Ltd.*, was on the scarcity of potential victims because very few people could afford to buy the defendant's $38 million custom-made product. There is nothing custom about the TSYS's merchant processing agreement. TSYS serves at least 821,000 merchants like Best Beach Getaways, for which, in 2018, TSYS processed 32.3 billion transactions, generating revenue for itself of more than $4 billion.[3]

TSYS reliance upon *Hansen v. Auto-Owners Inc. Co.*, 2010 WL 749820 (D. Colo. 2010) is likewise misplaced. Hansen did not characterize all contract breaches as private wrongs not actionable under CCPA. In fact, the court noted that CCPA violations are quite different, in so far as they include the necessary element of deception. *Id.* at *4. Here, the Court should allow discovery to proceed regarding the scope of public impact, to determine how many of TSYS's 821,000 merchants have been subjected to the same bad faith practice which has victimized Best Beach Getaways. At a prior hearing before

---

[3] https://www.tsys.com/about-us/, last accessed September 18, 2020.

the Court TSYS witnesses testified that other merchants have been subjected to the same conduct; discovery should go forward to quantify them.

Lastly, Defendant attempts to stretch a general rule stated in *Grynberg v. Agri Tech, Inc.*, 985 P.2d 59, 62 (Colo. App. 1999), that breaches of duties owed under a contract are actionable only in actions in contract, to the absurd end that would render CCPA relief unavailable to any party in contractual privity with a fraudster.

In a recent commercial case, *Shekarchian v. Maxx Auto Recovery, Inc.*, 2019 WL 1830337, *1 (Colo. App., 2019), the court found that the company's standard practice of executing a release containing misrepresentations to avoid potential liability constituted an unfair or deceptive trade practice which significantly impacted the public. This type of practice was "'plainly unfair and deceptive' within the meaning of the CCPA." *Id.* at *2. The court further determined that the plaintiff had suffered injuries to a legally protected interest, i.e. injury in fact, as he was deprived by the defendant of the use of his vehicle for several months. *Id.* at *3. Under *Shekarchian*, loss of use is injury in fact.

The deception that will be adequate to support Best Beach Getaways' claim for breach of duty of good faith and fair dealing should be adequate to support the deception component of its CCPA claim.

The "duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time." *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). In addition, "[t]he relative strength of the party exercising discretion typically arises from an agreement of the parties to confer control of a contract term on that party. The dependent party then is left to the good faith of the party in control." *Id.* at 498-99 (citation omitted).

TSYS Merchant Agreement[4] is replete with provisions that are intended to vest in TSYS the sole or absolute discretion to declare the parties' respective rights.[5]  In relation to the Reserve Account, these include at least: the "sole discretion" to establish the amount and kind of collateral or security to be required (Exh. O, ¶13); the "sole and absolute discretion"  to divert to itself any payments otherwise due to the Merchant, to satisfy whatever TSYS decides are the Merchant's present and future obligations (¶13.1(a)); and the "sole and absolute discretion" to decide the minimum required Reserve Account (¶13.2(a)(i)), declare any increases that must be made (¶13.2(a)(ii)), require the Merchant to deposit "a percentage of, or a fixed amount from each Transaction processed" (¶13.2(a)(iii)), or "otherwise determine the amount to be deposited" (¶13.2(a)(iv)), and, after giving the Merchant notice of the amount required for each month, require the Merchant to deposit such amount by the twentieth of each month (¶13.2(a)).

"Discretion in performance occurs 'when the parties, at formation, defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006); citing *Amoco Oil Co.*, 908 P.2d at 498 (holding that the City's implied duty of good faith and fair dealing to the Developers warranted a reasonable expectation, based on the discretionary language of the agreement, that it would exercise its budgetary

---

[4] TSYS has inconsistently represented that different versions of the contract apply. When Ms. Keryan sent the first hold notice on April 14, 2020, and when she provided a copy of the parties' contract to Mr. DeVos at his request on May 13, 2020, she attached "V2.209"; when she issued the second hold notice on June 22, 2020, she attached "V3.509". Her testimony about the inconsistency was confusing. In its filings, TSYS has proposed that V3.509 governs. Assuming one of them is the applicable version, except where expressly indicated in this memorandum, the language of the two versions is the same.

[5]  See Exh. O intro, and ¶¶1, 3.3(b), 3.4, 5.3, 5.5, 5.10, 6.2, 11.2(b), 11.2(b)(ii), 13, 13.1, 13.2.

discretion to determine the appropriation of funds.) As in *City of Golden*, Best Beach Getaways left the power to TSYS to set and control the reserve account after formation of the contract, a power TSYS chose not to wield for a decade. This historic practice is contrary to TSYS's conduct, as TSYS continues to give no notice or reason for holding and reserving nothing for ten years to holding and reserving 100% of cash flow, indefinitely.

The court in *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), held that "by duplicate charging, Amoco did not perform the contracts in accordance with the dealers' reasonable expectations," where "the law requires each party to a contract to act in such a manner that each party will attain their reasonable expectations under the contract." 908 P.2d at 499. Such is the case here; Best Beach Getaways' reasonable expectations under the contract were for TSYS to process its credit card transactions and allow it to receive money. It was not to withhold its funds and run it out of business. This is contrary to the purpose and expectations of the contract.

Surely, where one party takes steps that are entirely contrary to their historic relationship and which are virtually certain to promptly drive the other out of business, the party has engaged in deceptive and misleading behavior. This is manifestly true where the party takes steps that are otherwise inconsistent with the contract and purely advance the party's self-interest, entire expense of the other party. In the present case, such acts include:

- Creating a hold of 100% of receipts of a merchant that itself has no right to retain more than 20% of the receipts;
- Creating a Reserve Account and 100% hold without notice to a merchant that

has had a ten-year spotless "course of dealings" with TSYS;

- Creating, without notice, a Reserve Account with a 100% hold, in the absence of an express no-notice provision in the agreement and apparently contrary to the many portions of the contract that provide that TSYS may require the Merchant to take certain actions, or may take further actions on its own where it decides prior actions or balance are inadequate – no such actions could ever occur with a no-notice 100% hold (¶13, 13.1, 13.2);

- Converting itself from an unsecured creditor to a secured one, as attested by Ms. Keryan;

- Exceeding the authority granted under the agreement, which expressly prohibits the creation of a "hold" in relation to MasterCard transactions. Pg. 1, MasterCard transactions, par. b.

Colorado recognizes that the duty of good faith and fair dealing that is implicit in every contract extends to credit agreements, and to lenders who engage in unfair practices and non-disclosures. See, e.g., *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. App. 1994). Other jurisdictions have addressed similar bad faith, deceptive conduct by credit card processors. See *Table Steaks v. First Premier Bank, N.A.*, 650 N.W.2d 829 (S.D. 2002), in which the court considered a credit card processor's treatment of a Colorado merchant. The merchant completed an application for credit card processing which was apparently never reduced to a formal, signed agreement. Even so, the processor and MasterCard accepted and processed credit card payments for two years. When the situation was discovered, the defendants abruptly ceased processing the merchant's credit card payments, even though a

11

contractual relation existed, one through which the "mutual intention of the parties. . . was to enhance [the merchant's] business by encouraging credit card purchases", not by terminating them. Id., at 835. The abrupt termination constituted a breach of the processor's duty of good faith and fair dealing. See also *Blixseth v. Credit Suisse AG*, 2014 WL 4799066 *5 (D. Colo. 2014) (fully secured lender can breach covenant of good faith and fair dealing by engaging in deceptive practice designed to enable debt collection through means not permitted under the parties' contract).

> "Good faith performance of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." "A party's justified expectations are violated if evidence indicates it would not have signed the contract had it known of the manner in which the party given discretion would exercise its discretion to determine open terms under the contract." "Under Colorado law, the implied duty of good faith and fair dealing limits a party's ability to 'act unreasonably in contravention of the other party's *reasonable expectations*,' even if the express terms of a contractual provision appear to permit unreasonable actions."

*Ball Four, Inc. v. 2011-SIP-1 CRE/CADC Venture, LLC*, 526 B.R. 848, 852 (D. Colo. 2014) (citations omitted).

With the clear ability to present evidence of deception, and thousands of similarly-situated merchants, surely the CCPA case should see the light of day.

### IV. <u>Damages</u>

At various points in its motion, TSYS refuses to acknowledge that Best Beach Getaways has suffered clear and extreme damages. While the complaint alleges the existence of damages in general terms, discovery should go forward so as to demonstrate at least the following damages:

- Judgment for wrongfully taken funds, totaling about $2.5 million. The amount far exceeds any risk that might exist to TSYS. Also, TSYS refuses to disclose when any of these funds will be released. Especially where the sum at issue is so substantial as to amount to the plaintiff's lifeblood, indefinitely holding the funds is indistinguishable from permanently depriving its rightful owner of them.
- The lost use of the wrongfully taken funds, the absence of which has resulted in the alteration of Best Beach Getaways' business plans, including the specific loss of at least one favorable acquisition opportunity that was lost because of the absence of liquidity.
- Additional professional accounting fees that have been necessitated by TSYS's repeated calls for more data, all such calls being made to create the appearance of diligence.

**V.    Conclusion**

Best Beach Getaways asks this Honorable Court to deny Defendant's Partial Motion to Dismiss, so as to allow Plaintiff's Florida and Colorado consumer protection claims to stand and asks the Court to abate Plaintiff's tortious interference claims rather than dismissing them.

## **CERTIFICATE OF SERVICE**

I CERTIFY that a true and correct copy of the foregoing document has been furnished electronically via the CM/ECF system to all parties and counsel appearing before the Court in this matter, this 18th day of September 2020.

        */s/ Andy Dogali*
Andy Dogali
Fla. Bar No.: 0615862
adogali@dogalilaw.com
19321 US Hwy 19 North, Suite 307
Clearwater, FL 33764
(813) 289-0700
Secondary Email: lfair@dogalilaw.com;
reception@dogalillaw.com
*Counsel for Best Beach Getaways, LLC*