IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01962-NRN

BEST BEACH GETAWAYS LLC,

Plaintiff,

v.

TSYS MERCHANT SOLUTIONS, LLC,

Defendant.

---

## ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS (Dkt. #63)
---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court for all purposes upon consent of the parties (Dkt. #36) and an Order of Reference by Chief Judge Philip A. Brimmer (Dkt. #37). Now before the Court is Defendant TSYS Merchant Solutions, LLC's Partial Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #63), asking the Court dismiss Plaintiff Best Beach Getaways LLC's claims for tortious interference, violation of the Colorado Consumer Protection Act, and for violation of the Florida Deceptive and Unfair Trade Practices Act. Best Beach responded in opposition to TSYS' motion, and TSYS submitted a reply in support. Dkt. ##69 & 74. On October 21, 2020, the Court heard argument from the parties at a Telephonic Motion Hearing. Dkt. #75. Having considered the briefing, argument of the parties, the court file, as well as applicable law, the Court finds that TSYS' Motion should be granted in part and denied in part, as outlined below.

## PROCEDURAL BACKGROUND

Best Beach initially filed suit in the Circuit Court in and for Bay County, Florida on May 29, 2020. Dkt. #1-1. On June 10, 2020 TSYS removed the case to the U.S. District Court in the Northern District of Florida. On June 23, 2020, TSYS filed a Motion to Change Venue. Dkt. #8. On the same day, Plaintiff filed its Request for Emergency Evidentiary Hearing and Memorandum of Law in Support of Petition for Preliminary Injunction. Dkt. #9. After expedited briefing on the Motion to Transfer Venue, the District Court in the Northern District of Florida transferred the case to this District. Dkt. #26.

After it was transferred, I granted Best Beach's request for an evidentiary hearing at a telephonic status conference on July 21, 2020. Dkt. #43. Plaintiff submitted an Amended Complaint and renewed Motion for Preliminary Injunction (Dkt. ##44 & 45), Defendant submitted its response in opposition (Dkt. #51), and an evidentiary hearing was held on August 10, 2020. Dkt. #55. After the parties submitted supplemental briefing (Dkt. ##58 & 59), on August 14, 2020, the Court issued an oral ruling denying Plaintiff's request for a preliminary injunction. Dkt. #61. Defendant then filed its Partial Motion to Dismiss. Dkt. #63.

## FACTUAL BACKGROUND

The following facts are taken from BBG's Amended Complaint and are assumed true for purposes of this order unless otherwise noted. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

### *Best Beach's Business*

Best Beach provides management services to owners of more than 400 vacation rental properties throughout the Florida Panhandle. Amended Compl., Dkt. #44 ¶ 8.

For each vacation rental property, Best Beach and the property owner execute a written agreement, the terms of which typically establish that Best Beach will be responsible for substantially all management aspects of the property, including advertising the property for rental, receiving and processing reservations, cleaning and maintaining the property, serving the needs of the vacation renter during their stay, and collecting rent. In exchange for providing these services, Best Beach keeps a percentage of the rent paid, remitting the remaining rent receipts to the property owner. *Id.* ¶ 9.

Generally, people looking to rent a vacation property contact Best Beach through one of various online travel agencies, or directly through Best Beach's website. In doing so, the vacationer creates an online reservation, executes a rental contract, and provides an advance, nonrefundable $450 deposit toward the rent. *Id.* ¶ 10. Nearly all vacationers in Best Beach vacation rental properties make their deposits and pay their rent by credit card. *Id.* ¶ 13.

Upon receipt of the contract and deposit, Best Beach becomes obligated to provide the reserved vacation rental property to the vacationer and cannot permit anyone else to reserve the property. Pending the vacation renter's arrival at the property, Best Beach holds the deposit on account. *Id.* ¶ 11.

### *Merchant Card Processing Agreement*

In 2010, TSYS and Best Beach entered into a Merchant Card Processing Agreement, pursuant to which TSYS provided credit card processing services to Best

Beach. Dkt. #64-1.[1] Until the after the initiation of this lawsuit, TSYS had been the sole provider of the credit card processing services for Best Beach. Dkt. #44 ¶ 14.

Generally, when a vacation renter authorizes their credit card company to pay a deposit or rent for the benefit of Best Beach and its property owner customer, the funds go from the credit card company to TSYS. TSYS then deposits the funds, less any applicable service fees, into a bank account owned by Best Beach. *Id.* ¶ 15.

### *Cancellations*

When a vacationer requests a refund because of a cancellation, they do so by first contacting Best Beach. Ordinarily, Best Beach denies the requested refund because vacation rental agreement expressly states that the deposit is nonrefundable. *Id.* ¶ 17–18.

If a cancelling vacationer who has been denied a refund chooses to challenge Best Beach's denial, they do so by asking their credit card company to reverse the prior deposit payment. At that point, the credit card company performs its own investigation of the challenge. If the credit card company determines that Best Beach's denial was valid, Best Beach keeps the deposit and disburses the deposit funds to the property owner and itself, pursuant to the vacation rental management services agreement. *Id.* ¶ 19.

---

[1] The Merchant Processing Agreement was not attached to the Amended Complaint, but was submitted as an exhibit to Defendant's Partial Motion to Dismiss. Because it was referenced in the Amended Complaint and is central to Plaintiff's claims, the Court can consider the agreement in deciding the motion to dismiss. *See Cty. of Santa Fe, N.M. v. Public Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) (A district court may consider documents referred to in the complaint that are central to a plaintiff's claim if the parties do not dispute their authenticity without converting the Rule 12(b)(6) motion into a summary judgment motion.).

If the credit card company finds a challenge valid, the credit card company initiates a process called a "chargeback," through which the cancelling vacationer's credit card account is credited, and Best Beach's deposit account is debited for the refund. *Id.* ¶ 20. Upon crediting its account holder with the refund, the credit card company notifies TSYS that it has initiated a chargeback. At that point, TSYS notifies Best Beach that a chargeback is being processed, begins its own evaluation of the validity of the claimed refund, which typically includes asking Best Beach for documentation regarding the chargeback. *Id.* ¶ 21.

If TSYS agrees with Best Beach and deems the chargeback invalid, TSYS notifies the cancelling vacationer's credit card company, and the chargeback is reversed. *Id.* ¶ 22. If TSYS determines that the chargeback valid, TSYS will withdraw the funds from Best Beach's deposit account and credit back the cancelling vacationer's credit card company. *Id.* ¶ 23.

According to the terms of the Merchant Processing Agreement, TSYS can require Best Beach to fund a "reserve account" for TSYS's protection against excessive chargebacks. *Id.* ¶ 24. If Best Beach should fail to adequately fund the reserve account, TSYS is authorized to create a "hold," commensurate with its risk, against any funds that are received or on deposit for the benefit of Best Beach. *Id.* ¶ 25.

Best Beach maintains that TSYS was aware of the nature and volume of Best Beach's business, the vacation rental services Best Beach provides, and the contractual obligations of Best Beach Getaways toward its property owner customers and the vacation property renters. *Id.* ¶ 26. Best Beach also maintains that until the COVID-19 pandemic wreaked havoc on the travel industry, it never had excessive chargebacks,

5

and that it was in fact consistently better than other similarly situated providers of vacation rental services. *Id.* at ¶ 27.

### *COVID-19 Pandemic*

On or about April 14, 2020, without any prior notice, TSYS imposed an immediate "hold" against all new credit card payments made to Best Beach. In instituting this hold, TSYS diverted 100% of Best Beach's deposits on account, and incoming revenue, to itself. *Id.* at ¶ 28. Best Beach maintains that had it been given prior notice, it could have provided another form of security to TSYS in the form of a letter of credit, a bond, or other assets. *Id.* at ¶ 29.

When TSYS notified Best Beach of the hold, it informed Best Beach that it had conducted a review of Best Beach's chargeback experience, but did not provide any details about the results of its review. *Id.* at ¶ 30. The hold continued for thirty-seven days, until May 21, 2020. *Id.* at ¶ 31. During the 37-day period, Best Beach maintains that TSYS "was lethargically doing nothing, instead deliberately allowing the diversion of Best Beach's deposits and revenue to grow exponentially." *Id.* The increase in the amount of funds held was, according to Best Beach, not because TSYS made any calculation of its claimed risk but a result of the volume of Best Beach's business over that period of time. *Id.* at ¶ 32.

By May 21, 2020, TSYS notified Best Beach that it would continue the hold as to all funds diverted through that date but would no longer divert new revenues. At that point, TSYS's diversion of Best Beach's deposits and receipts totaled about $2 million. *Id.* at ¶ 33.

On June 22, 2020, after this lawsuit was filed, and after Best Beach experienced an influx of new vacationers when the Florida Governor lifted the ban on vacation rentals, TSYS announced that it would again be placing a hold on Best Beach's funds, and would do so until it reached "target reserve" of $4 million, and stating that it might later adopt an even higher figure. *Id.* at ¶ 34.

On July 24, 2020, the same day the Amended Complaint was filed, TSYS told Best Beach that the hold stood at $4.425 million, even more than TSYS's "target reserve." According to Best Beach, TSYS gave no explanation for why the risk had exponentially increased as Best Beach Getaways' business had increased. *Id.* at ¶ 36.

On several occasions during the hold period, while TSYS was allegedly "reviewing" the situation, TSYS requested further information from Best Beach. Best Beach asserts that it promptly provided the requested information, only to be again told it would be reviewed along with information already provided. Best Beach maintains that TSYS was not acting pursuant to any contract or industry custom in relation to the review of its risk, in that it was not genuinely reviewing anything. Instead, Best Beach alleges, TSYS was just allowing its diversion of funds to grow as time passed. *Id.* at ¶ 38.

Best Beach had no access to the funds in the reserve account held by TSYS. *Id.* at ¶ 45. Best Beach maintains that throughout the entire hold period, TSYS knew it was "greatly undermining" Best Beach's ability to continue its operations. Best Beach also maintains that TSYS also knew that approximately 80% of the amount being held by TSYS was not revenue ultimately due to Best Beach, but was instead money that was owed to the owners of the vacation properties that Best Beach manages. *Id.* at ¶¶ 40–

7

42. In addition, by holding deposits, Best Beach asserts that TSYS also undermined its ability to honor its obligations to the vacation renters who placed deposits. *Id.*

The Amended Complaint asserts five claims for relief: (1) tortious Interference with Best Beach's contracts with property owners; (2) tortious interference with contract with vacationers/depositors; (3) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); (4) breach of the implied covenant of good faith and fair dealing; and (5) violation of the Colorado Consumer Practices Act ("CCPA"). *Id.* at ¶¶ 44–79. .

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled allegations as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), purely conclusory statements are not entitled to this presumption. *Iqbal*, 556 U.S. at 678, 681.

So long as the plaintiff pleads sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," it has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570. "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for

which relief may be granted." *Sutton v. Utah St. Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).

## ANALYSIS

TSYS seeks dismissal of Best Beach's claims for tortious interference (claims 1 and 2); violation of the FDUTPA (claim 3); and violation of the Colorado Consumer Protection Act (claim 5).

### I. Tortious Interference Claims

TSYS argues that Best Beach's tortious interference claims should be dismissed because Best Beach failed to allege facts sufficient to support the claim under Rule 12(b)(6), and because Colorado's economic loss rule precludes Best Beach from asserting tort claims. Because the Court finds that Best Beach essentially conceded that it cannot state a claim for tortious interference with respect to its contracts with property owners or depositors, the Court need not address TSYS's economic loss rule argument.

In order to establish tortious interference, Best Beach must show: (1) "the plaintiff had a contract with another party;" (2) "the defendant knew or should have known of such contract's existence;" (3) "the defendant intentionally induced the other party to the contract not to perform the contract with the plaintiff;" and (4) "the defendant's actions caused the plaintiff to incur damages." *Lutfi v. Brighton Cmty. Hosp. Ass'n*, 40 P.3d 51, 58 (Colo. App. 2001) (citation omitted). For the third element, the interference must be "both intentional and improper." *Amoco Oil Co.*, 908 P.2d at 500. "Even if the interference is intentional, therefore, liability does not attach unless the court concludes that the actor's conduct is also improper." *Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P.2d 1112, 1118 (Colo. 1990). Finally, in order to assert a claim of tortious interference,

<0>

there must be a breach of contract. "If the contract has been fully performed, then there has been no interference" *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1118 (10th Cir. 2009)

Best Beach makes no attempt to address TSYS' arguments with respect to the tortious interference claims. Instead, it asks the Court to "abate" the claims, providing no legal support for its request and arguing that dismissing them now means Best Beach may have to "re-file" them later. The Court will not abate the claims. The Court takes from Best Beach's request to do so that there has been no breach of contract as between Best Beach and its property owners or depositors at this point. Thus, the Court finds that Best Beach impliedly concedes that it has not pleaded the facts necessary to support its claims for tortious interference with contract. Accordingly, the Court finds that both claims for tortious interference should be dismissed.

## II. Florida Deceptive and Unfair Trade Practices Act

TSYS argues that Best Beach cannot maintain its claim under the FDUTPA because the parties selected Colorado law to govern the Agreement, thus barring liability under a Florida statute.

Best Beach argues that the Agreement provides for venue in Colorado, and not that Colorado law governs any dispute between the parties. The Court agrees with Best Beach. The Agreement provides:

> COLORADO LAW; JURISDICTION; VENUE. Merchant's offer to enter into this Merchant Agreement is made in Boulder Colorado and accepted by Bank in Columbus, Georgia; **this Merchant Agreement shall be** performed by Merchant in Boulder, Colorado and **governed by Colorado law**, excluding its conflict of laws rules. Merchant and Guarantor agree to bring any claim or other litigation arising from or relating to this Merchant Agreement that it or they may have in the county and district courts in and for Boulder County, Colorado, and Merchant and any Guarantor irrevocably and unconditionally submit to the jurisdiction of such courts with respect to any such litigation.

Agreement, Dkt. # 64-1 at ¶ 19 (emphasis added). TSYS cites *Elvig v. Nintendo of Am., Inc.*, 696 F. Supp. 2d 1207, 1215 (D. Colo. 2010), and *Martin v. Creative Mgmt. Grp., Inc.*, 2013 WL 12061809, at *9 (S.D. Fla. July 26, 2013), to support its argument. The Court finds *Elvig* inapplicable because it does not address a choice of law provision in a contract. 696 F. Supp. 2d at 1210. In the *Martin* case, the court refused to apply New York's wage law to the terms of a contract, where the employment contract stated that "Florida law will govern any disputes over the subject matter of the contract." *Martin*, 2013 WL 1206189 at *9. The court found that the issue of wages fell within the subject matter of the employment agreement, and that as such Florida wage law, not New York, applied. The choice of law provision here provides only that the <u>agreement</u> shall be governed by Colorado law. It does not include broad terms such as "any or all claims" between the parties. The Court agrees with Best Beach that the broad language in the Agreement, "arising from or relating to" relates only to venue, and not choice of law. *See Lawson v. Glob. Payments Inc.*, No. 18-cv-03360-PAB-SKC, 2019 WL 4412271, at *3 (D. Colo. Sept. 16, 2019) (unpublished) (construing forum selection clause based on plain language and contract as a whole, noting that courts construe language like "relating to" and "arising out of" broadly, and reyling on the fact that certain language was included in forum selection clause but not other portions of the contract). It also would make sense that any contractual disputes would be governed by Colorado law, but such a provision would not give TSYS free reign to violate Florida statutory provisions governing the behavior of commercial entities.

       The Court now turns to the question of whether Best Beach adequately plead a claim under FDUTPA. The Court finds it has.

To state a claim under the FDUTPA, Fla. Stat. §§ 501.201 *et seq.* , a plaintiff must allege three elements: "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys.*, Inc., 715 F.3d 1243, 1250 (11th Cir. 2013). An "unfair" practice is one "that offends established public policy and one that is substantially injurious to consumers, unscrupulous, oppressive, unethical, or immoral." *Florida v. Beach Blvd Auto. Inc.,* 139 So. 3d 380, 386–87 (Fla. Dist. Ct. App. 2014) (citation omitted). TSYS argues that Best Beach did not allege the elements, and, in particular, that it failed to allege a deceptive or unfair trade practice. TSYS asserts that Best Beach failed to properly allege any deception, arguing that the heightened pleading standard in Rule 9(b) applies.

For its part, Best Beach argues that the same conduct by TSYS that supports Best Beach's claim for breach of the implied duty of good faith and fair dealing is sufficient to support its FDUPTA claim. The Court agrees, particularly at this stage of the litigation, and notes that a plaintiff is not required to plead deception and may satisfy the standard with factual allegations to support a finding that the practice is "unfair," i.e., "substantially injurious, unscrupulous, oppressive, unethical, or immoral." *See Beach Blvd. Auto*, 139 S. 3d at 386–87. *See also Hetrick v. Ideal Image Dev. Corp.*, 372 F. App'x. 985, 992 (11th Cir. 2010) (unpublished) (noting that the FDUTPA "sweeps far more broadly than the doctrine of fraud or negligent misrepresentation"); *Altamonte Pediatric Assocs., P.A. v. Greenway Health, LLC,* No. 8:20-CV-604-T-33JSS, 2020 WL 5350303, at *3 (M.D. Fla. Sept. 4, 2020) (acknowledging a "split" in authority as to whether FDUTPA claims are required to satisfy the heightened pleading standard in Rule 9(b), and noting that the "trend has been for courts to apply the Rule 9(b) standard

12

when FDUTPA claims sound in fraud."). Best Beach's claims do not sound in fraud. As such, this Court finds that it does not need to apply the heightened pleading standard to Best Beach's claim. Rather, the Court concludes that Best Beach has alleged a plausible FDUTPA claim based on "unfair" but not necessarily "deceptive" conduct on the part of TSYS. At least one Florida court has found that allegations of a breach of the duty of good faith and fair dealing are sufficient to state a claim under FDUTPA. *See Martorella v. Deutsche Bank Nat. Tr. Co.*, 931 F. Supp. 2d 1218, 1224 (S.D. Fla. 2013) (denying defendant's motion to dismiss claims under FDUTPA and for breach of duty of good faith and fair dealing where it was alleged that defendants charged "excessive and unreasonable" amounts for force-placed insurance").

TSYS asserts in its reply that the Amended Complaint does not contain "plausible (to say nothing of particularized) allegations of damages," Dkt. #74 at 11, argues that the FDUTPA requires specific allegations of actual damages and cites in support *Clear Marine Ventures, Ltd. v. Brunswick Corp.*, No. 08-22418-CIV, 2010 WL 11504399, at *3 (S.D. Fla. Jan. 28, 2010). The Court finds *Clear Marine* inapposite as it addresses the appropriate measure of actual damages in the context of a boat alleged to be defective. The measure of "actual" damages in a case involving a defective product is very different than one that involves services, as is the case here.

In the Amended Complaint, Best Beach outlined how it was damaged by TSYS's choice to withhold deposits and receipts in a reserve account, including how much was withheld. *See, e.g.,* Dkt. #44 ¶¶ 44-46, 56. The Court finds these factual allegations support a plausible claim under FDUTPA.

### III.     Colorado Consumer Protection Act

The CCPA, Colo. Rev. Stat. § 6-1-101 *et. seq.*, was enacted to regulate commercial activities and practices which, "because of their nature, may prove injurious, offensive, or dangerous to the public." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining*, Inc., 62 P.3d 142, 146 (Colo. 2003) (quoting *People ex rel. Dunbar v. Gym of America*, Inc., 177 Colo. 97, 493 P.2d 660, 667 (1972)). Thus, the CCPA "deters and punishes businesses which commit deceptive practices in their dealings with the public by providing prompt, economical, and readily available remedies against consumer fraud." *Id.* (citations omitted). In order to prove a violation of the CCPA, a plaintiff must show that:

> (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) the plaintiff suffered injury to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury.

*Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998). TSYS argues that Best Beach fails to sufficiently allege the third element, which requires that the alleged conduct significantly impact the public.

Colorado courts look to several factors to determine whether a challenged practice has significant impact on the public. These include: (1) the number of consumers directly affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers; and (3) evidence that the challenged practice has previously impacted other consumers or has significant potential to do so in the future. *Dean Witter Reynolds Inc. v. Variable Annuity Life Ins. Co.*, 373 F.3d 1100, 1113 (10th Cir. 2004) (citing *Martinez v. Lewis*, 969 P.2d 213, 222 (Colo. 1998)).

14

The Court agrees with TSYS that Best Beach fails to allege a significant impact on the public as consumers or potential consumers of TSYS' credit card processing services. In particular, there is no evidence that a large number of consumers were directly impacted, or that the conduct by TSYS has the significant potential to impact other consumers in the future. Instead, the Court finds that the harm alleged in the Amended Complaint occurred in the context of a private agreement. *State ex rel. Weiser v. Castle Law Grp., LLC,* 115, 457 P.3d 699, 717, *cert. denied sub nom. State ex rel Weiser v. Castle Law Grp., LLC*, No. 19SC325, 2020 WL 897132 (Colo. Feb. 24, 2020) (noting that the public impact element is not met when the "alleged deceptive practices occurred only in the context of private agreements to provide services."). Here, the agreement was between TSYS as credit card processor and Best Beach as merchant. If Best Beach could show that TSYS conduct had adversely impacted a substantial number of merchants using TSYS's credit card processing services, then the required public impact might be shown. But here, this is a one-off private dispute between Best Beach and its credit card processor, despite the indirect impact the hold could conceivably have had on vacationers or vacation property owners.

Accordingly, the Court finds that CCPA claim should be dismissed.

## CONCLUSION

It is HEREBY ORDERED that Defendant TSYS Merchant Solutions, LLC's Partial Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #63), is GRANTED in part and DENIED in part. It is GRANTED with respect to Best Beach Getaways, LLC's claims for tortious interference with property owner contracts, tortious interference with depositor contracts, and for violation of Colorado's Consumer Protection Act. The

15

motion is DENIED with respect to Best Beach's claim under Florida's Deceptive and Unfair Trade Practices Act.

Date:    December 4, 2020                BY THE COURT:

*N. Reid Neureiter*
_____
N. Reid Neureiter
United States Magistrate Judge