IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-01962-NRN

BEST BEACH GETAWAYS LLC,

Plaintiff,

v.

TSYS MERCHANT SOLUTIONS, LLC,

Defendant.

---

**ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. #84),
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. #88), and
PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDMENT TO COMPLAINT TO
ADD PRAYERS FOR EXEMPLARY DAMAGES AND DISGORGEMENT (Dkt. #86)**

---

**N. Reid Neureiter
Untied States Magistrate**

This matter is before the Court for all purposes upon the consent of the parties (Dkt. #36), and an Order of Reference by Chief Judge Philip A. Brimmer pursuant to 28 U.S.C. § 636(c). (Dkt. #37.) Before the Court are Defendant TSYS Merchant Solutions, LLC's ("TSYS") Motion for Summary Judgment (Dkt. #84), Plaintiff Best Beach Getaways LLC's ("Best Beach") Motion for Partial Summary Judgment (Dkt. #88), and Best Beach's Motion for Leave to File Amendment to Complaint to Add Prayers for Exemplary Damages and Disgorgement (the "Motion for Leave to Amend"). (Dkt. #86.)

I heard oral argument on June 11, 2021 (Dkt. #112) and I have taken judicial notice of the Court's file and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is hereby **ORDERED** as follows: TSYS's Motion for Summary Judgment (Dkt. #84) is

**GRANTED IN PART** and **DENIED IN PART**, Best Beach's Motion for Partial Summary Judgment (Dkt. #88) is **DENIED**, and Best Beach's Motion for Leave to Amend (Dkt. #86) is **DENIED**.

## PROCEDURAL BACKGROUND

This matter has a somewhat complicated procedural history, which the Court detailed in its Order on TSYS's Partial Motion to Dismiss. (Dkt. #76.) The Court assumes the parties' familiarity with the history and will not repeat it here except as necessary.

In relevant part, Best Beach filed its Amended Complaint (Dkt. #44) on July 24, 2020, bringing six claims for relief: (i) tortious interference with its contracts with property owners, (ii) tortious interference with its contracts with depositors, (iii) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), (iv) breach of implied covenant of good faith and fair dealing, (v) violation of the Colorado Consumer Protection Act ("CCPA"), and (vi) emergency preliminary injunction. Best Beach also submitted a renewed Motion for Preliminary Injunction. (Dkt. #45.) Ultimately, after an evidentiary hearing, the Court issued an oral ruling denying Best Beach's request for a preliminary injunction on the ground that the harm alleged did not appear to be irreparable. (Dkt. #61.)

TSYS then filed its Partial Motion to Dismiss Plaintiff's Amended Complaint (Dkt. #63), which the Court partially granted and partially denied on December 4, 2020. (Dkt. #76.) Specifically, the Court dismissed Best Beach's tortious interference claims, as well as its claim for violation of the CCPA. Thus, the only surviving claims in this matter are

for (1) breach of the implied covenant of good faith and fair duty and (2) violation of the FDUTPA.

On April 21, 2021, TSYS moved for summary judgment on these remaining claims. (Dkt. #84.) TSYS argues that Best Beach, as a matter of law, cannot show that TSYS breached the duty of good faith and fair dealing. (*Id.*) TSYS also moves for summary judgment as to certain categories of damages for the breach of duty claim. (*Id.*) Finally, TSYS argues that Best Beach's FDUTPA claim fails because Best Beach has failed to offer evidence of "actual damages." (*Id.*) Best Beach responded (Dkt. #101) and TSYS replied. (Dkt. #109.)

Best Beach, for its part, moved for summary judgment as to the issue of TSYS's liability on the breach of the implied duty of good faith and fair dealing claim. (Dkt. #88.) Best Beach also filed a Motion for Leave to Amend, seeking to add claims for exemplary damages and disgorgement. (Dkt. #86.) TSYS opposed both of Best Beach's motions. (Dkt. ##100 and 99, respectively.) The Court heard oral argument on each of these motions on June 11, 2021. (Dkt. #112.)

## FACTUAL BACKGROUND

The following facts are undisputed unless otherwise indicated.

### I.      The Parties and the Merchant Card Processing Agreement

Best Beach provides management services to owners of more than 400 short-term vacation rental properties on behalf of property owners throughout the Florida Panhandle. (Dkt. #84 at 2; Dkt. #88 at 2.) [1] It facilitates renting those properties for

---

[1] All citations to page numbers in docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

vacationing customers. (Dkt. #84 at 2; Dkt. #88 at 2.) After making a reservation, the vacationing customer provides a non-refundable $450 deposit, which is applied towards rent. (Dkt. #84 at 2.) Best Beach's standard rental agreement contains a strict "no-refunds" policy. (*Id.* at 3.)

TSYS provides VISA and Mastercard credit card processing services for Best Beach pursuant to the Merchant Card Processing Agreement (the "Agreement"). (*See* Dkt. #85-6.) Under section 3.4 the Agreement, Best Beach is required to maintain a "settlement account" into which TSYS provides "provisional credits" for the dollar amount of credit card transactions processed for Best Beach, less any fees owed to TSYS. (*Id.* at 2.) This same section provides, in bold lettering: "**Provisional credit to Merchant for a Transaction disputed by a Cardholder for any reason is not final**." (*Id.* at 2–3.) Section 3.4(b) further provides that TSYS can make certain deductions from payments to Best Beach's settlement account, including for amounts for chargebacks and amounts to be held in a reserve account (explained in more detail below). (*Id.* at 3.) Section 3.4(c) sets forth Best Beach's acknowledgement that "all payments and credits provided to [Best Beach] are provisional and subject to suspension, to Chargeback, and to adjustments" in accordance with the terms of the Agreement. (*Id.*)

A chargeback occurs when a customer asks their credit card company for his or her money back by disputing the legitimacy of a charge. TSYS, as the payment processor, and in accordance with the terms of the Agreement as well "Operating Rules," is responsible for reimbursing the credit card companies for all chargebacks initiated by the customer; at least initially—Best Beach is ultimately responsible. (*Id.* at 3, 4, 6.) TSYS is required to fund the chargeback regardless of whether Best Beach's

settlement account contains sufficient funds to cover the cost of the chargeback, and even if Best Beach disagrees with the chargeback request. (*Id.* at 6.)

Section 13 of the Agreement provides that Best Beach may be required to provide additional collateral security for its obligations under the Agreement, and that such collateral "shall be of a kind, and in amounts, satisfactory to Bank in Bank's sole discretion." (*Id.* at 5.) One of the means that TSYS has to protect itself from the risk of chargebacks is through the use of a reserve account. (*See id.*) Section 13.1(a) provides:

> Merchant [Best Beach] may be required to deposit, or Merchant Bank [TSYS] may deposit by deducting from any payment due to Merchant or from any funds in the Settlement Account or any other deposit account of Merchant, into an account maintained by Merchant Bank . . . (the "Reserve Account"), initially or at any time in the future as requested by Bank, sums sufficient to satisfy Merchant's current and/or future obligations as determined by Bank in its sole and absolute discretion.

(*Id.*)

Section 13.4 of the Agreement sets forth the terms for replenishment of the reserve account, including specifying that if the balance reserve account falls below the minimum required or is "otherwise deficient," "Merchant Bank may, without prior notice, deposit the deficiency into the Reserve Account by reducing any payment to Merchant required by this Merchant Agreement or deduct the deficiency from the Settlement Account . . . ." (*Id.* at 6.)

Further, section 13.5 provides for additions to the reserve account. (*Id.*) In relevant part, section 13.5 states:

> If Bank has reason to believe that Merchant may be liable to customers or to Bank for Chargebacks exceeding the balance in the Reserve Account, Merchant Bank may: (a) immediately place in the Reserve Account payments due to Merchant and/or stop processing transactions for Merchant until such time as the extent of Merchant's obligations to Bank, or

Merchant's liability for Chargebacks, or Merchant's liabilities to customers are known, and Bank no longer deems itself insecure.

TSYS argues that, taken together, sections 3.4 and 13 expressly permit it to "deduct from any 'provisional payment' to Best Beach 'any amount to be deposited into the Reserve Account.'" (Dkt. #84 at 5.) Best Beach contends that TSYS had no contractual authority to create a reserve account in the first instance without prior notice, because Section 13 of the Agreement contemplates that TSYS first give Best Beach an opportunity to provide additional collateral. (Dkt. #101 at 9–10.)

Finally, section 11 of the Agreement contains several provisions regarding termination of the contract. (*Id.* 4–5.) Section 11.2(b)(v) provides that TSYS may, in its sole and absolute discretion, immediately terminate the Agreement for cause if Best Beach has "a monthly ration of Chargebacks to Transactions exceeding (1%), or Chargebacks are in excess of three percent (3%) of any monthly dollar amount of transactions." (*Id.* at 4.)

## II.    The COVID-19 Pandemic, Chargebacks, and the Reserve Account

In early to mid-2020, many of Best Beach's customers sought to cancel their reservations due to the COVID-19 pandemic, particularly after Florida banned all short-term vacation rentals as part of its response to the pandemic. (Dkt. #84 at 3–4.) Because of its strict no-refund policy, Best Beach refused to provide refunds when customers cancelled. As a result, many of Best Beach's customers initiated chargebacks with their credit card companies.[2]

---

[2] Best Beach notes, and TSYS does not dispute, that Best Beach eventually adopted a more flexible refund policy. (Dkt. #101 at 7–8.) Best Beach argues that this change in

Best Beach claims that TSYS first placed a hold on its account in March 2020. (Dkt. #101 at 10.) TSYS disputes this, arguing that this action was not a hold, was not related to any reserve, and was "at most, a brief delay in remitting provisional credits to Best Beach lasting a few days." (Dkt. #109 at 6.)

On April 12, 2020, Best Beach appeared on TSYS's "Chargeback Top 5" report, which indicated that Best Beach was experiencing a high level of chargebacks. (Dkt. #84 at 6.) Upon review, TSYS discovered that approximately 1.98% of Best Beach's transactions were being charged back. (*Id.*) Under the terms of the Agreement, TSYS could have terminated the contract for cause. (*See* Dkt. #85-6.) Instead of terminating the Agreement, on April 14, 2020, TSYS instituted an immediate hold of 100% of Best Beach's incoming funds and placed those funds in the reserve account (Dkt. #84 at 6; Dkt. #88 at 2.) TSYS lifted the 100% hold on incoming revenues on May 19, 2020. (Dkt. #84 at 7.) The money held until that time remained in the Reserve Account. (Dkt. #88 at 2–3.)

On June 22, 2020, TSYS reimplemented the 100% hold on Best Beach's incoming revenues with the goal of establishing a $4 million reserve. (Dkt. #84 at 7; Dkt. #88 at 3.)

During the Status Conference on July 21, 2020, this Court granted Plaintiff's request for an emergency preliminary injunction hearing, ordered expedited discovery, and set the hearing for August 10, 2020. (*See* Dkt. #43.)

---

policy was communicated to TSYS and should have demonstrated a decline in TSYS's risk, but TSYS failed to take this change into account. (*Id.* at 8.)

On July 31, 2020, the Reserve Account reached a balance of about $4,765,727. (Dkt. #88 at 3.) That same day, TSYS announced that it would lift the hold on the account and release $1 million from the Reserve Account, leaving the remaining balance in the reserve account at approximately $3,765,727. (Dkt. #84 at 9; Dkt. #88 at 3.)

On August 7, 2020, one business day before the Court held its preliminary injunction hearing in this case, TSYS announced that it would release an additional $1,489,433 from the Reserve Account. (Dkt. #84 at 9.) The release took effect on August 10, 2020 (the date of the injunction hearing), leaving the balance of the Reserve Account at $2,275,984. (Dkt. #88 at 3.) Additionally, sometime in August 2020, TSYS gave 60 days' notice that it was terminating the Agreement for cause. (Dkt. #84 at 10; Dkt. #88 at 4.) The Agreement terminated on October 19, 2020. (Dkt. #88 at 10.)

On October 21, 2020, TSYS announced that it would release another $1,000,000, thereby leaving an approximate balance of $1,275,984. (Dkt. #84 at 9, Dkt. #88 at 4.) This was the same day as the hearing on TSYS's Partial Motion to Dismiss.

On December 3, 2020, TSYS communicated that it had or would soon release an additional $500,000, leaving a Reserve Account balance of approximately $765,193. (Dkt. #84 at 10; Dkt. #88 at 4.)

On February 2, 2021, TSYS advised that it would release an additional $476,000, which it later did. (Dkt. #84 at 10; Dkt. #88 at 4.) This release left a Reserve Account balance of approximately $289,093 (Dkt. #88 at 4.) To date, these funds are still held in the Reserve Account. (Dkt. #84 at 10; Dkt. #88 at 4.)

## MOTIONS FOR SUMMARY JUDGMENT

I.       **Legal Standard**

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact."). *See also Hysten v. Burlington N. & Santa*

*Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). "[T]he content of summary judgment

evidence must be generally admissible and . . . if that evidence is presented in the form

of an affidavit, the Rules of Civil Procedure specifically require a certain type of

admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v.*

*Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record

and draws all inferences in the light most favorable to the non-moving party." *Pepsi-*

*Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir.

2005).

A judge's function at summary judgment is not to weigh the evidence and

determine the truth of the matter, but to determine if there is a genuine issue for trial.

*Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Where the parties file cross motions for

summary judgment, "we are entitled to assume that no evidence needs to be

considered other than that filed by the parties, but summary judgment is nevertheless

inappropriate if disputes remain as to material facts." *Atl. Richfield Co. v. Farm Credit*

*Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (internal citations and quotations

omitted).

## II.   Analysis

At the core of this dispute is whether the account holds in this matter were, as

TSYS alleges, commensurate with the risk that TSYS faced and allowed by the terms of

the contract or, as Best Beach alleges, undertaken in violation of the duty of good faith,

with no relationship to the risk TSYS actually faced. TSYS and Best Beach both move

for summary judgment as to whether TSYS's conduct amounts to a breach of the duty of good faith and fair dealing. TSYS also moves for summary judgment as to several (but not all) categories of damages Best Beach seeks for breach of the duty of good faith and fair dealing. Lastly, TSYS argues that Best Beach's claim for violation of the FDUTPA claim fails because Best Beach has not shown evidence of "actual damages" within the meaning of the statute—a necessary element of that claim.

Upon review, it is clear there are fact issues that prevent me from granting summary judgment in favor of either party as to the issue of liability for the breach of the duty of good faith and fair dealing. Further, I find that TSYS's is entitled to summary judgment as to Best Beach's claims for lost profits and revenues, but not for Best Beach's alleged mitigation damages. Finally, I find that Best Beach has offered evidence of actual damages under the FDUTPA and, therefore, summary judgment on the FDUTPA claim must be denied.

### a. Genuine issues of material fact preclude the grant of summary judgment in favor of either side as to liability for Best Beach's claim for breach of the implied duty of good faith and fair duty.

First, I consider the parties' cross-motions for summary judgment as to TSYS's liability for breach of the implied duty of good faith and fair dealing. "In Colorado, every contract contains an implied duty of good faith and fair dealing." *Transamerica Premier Ins. Co. v. Brighton Sch. Dist. 27J*, 940 P.2d 348, 351 (Colo. 1997). The good faith doctrine is necessary to effectuate the intentions of the parties and to honor their reasonable expectations. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). "Good faith performance of a contract involves 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *ADT Sec.*

*Servs., Inc. v. Premier Home Prot., Inc.*, 181 P.3d 288, 293 (Colo. App. 2007) (quoting *Amoco Oil Co.*, 908 P.2d at 498). For that reason, the doctrine "may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party." *Amoco Oil Co.*, 908 P.2d at 498. "Discretion in performance occurs 'when the parties, at formation, defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation." *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006) (quoting *Amoco Oil Co.*, 908 P.2d at 498). This duty prohibits a party from exercising "discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1104 (10th Cir. 2009) (citation omitted).

The good faith doctrine cannot be used to contradict terms or conditions for which the parties have bargained. *Amoco Oil Co.*, 908 P.2d at 498. "The doctrine does not obligate a party to accept a material change in the terms of the contract, or to assume obligations that vary or contradict the contract's express provisions, nor does it permit a party to inject substantive terms into the contract." *ADT Sec. Servs., Inc.*, 181 P.3d at 293. Generally, "[w]hether a party acted in good faith is a question of fact which must be determined on a case by case basis." *Amoco Oil Co.*, 908 P.2d at 498.

With respect to the breach of duty of good faith and fair dealing claim, this case is fraught with factual disputes that are appropriately left for the jury to decide. TSYS argues that Best Beach's claim for breach of the duty of good faith and fair dealing fails because Best Beach has not shown that TSYS acted dishonestly or outside of commercially accepted standards. TSYS states that the initial hold on provisional credits

into Best Beach's account was "put in place to allow TSYS to build a reserve commensurate with what TSYS perceived to be the risk by Best Beach's merchant account, taking into account Best Beach's elevated chargebacks, the ongoing and unprecedented COVID-19 pandemic, and other relevant factors . . . ." (Dkt. #84 at 6.) Best Beach argues that it was not given any advance warning of the hold, and that it should have been given the opportunity to provide some other form of collateral security contemplated by Section 13. (Dkt. #101 at 9.)

TSYS justifies the second hold (applied in June 2020) and the increase in the reserve amount by alleging that "Best Beach's bookings spiked far in excess of historical norms and chargeback levels" and that its Worldwide Credit Department considered various factors when establishing the $4 million reserve. (Dkt. #84 at 7.) With respect to releasing the funds in July 2020, TSYS states this release was "part of its ongoing review of Best Beach's account" and that TSYS "determined that its risk had diminished as the summer travel season dwindled." (Dkt. #84 at 9.) Best Beach, however, argues that TSYS was still recklessly over-secured at this time, citing internal communications demonstrating that TSYS estimated that its risk exposure was between $1.5 and $2.5 million, apparently allowing for at least $1.2 million in "headroom." (*See* Dkt. #88 at 7.) Best Beach contends these emails, as well as others demonstrating that TSYS was interested in "managing away" Best Beach as a client, evidence TSYS's bad faith performance of the contract. (*See* Dkt. #101 at 2–3.)

To justify the release of funds and their timing, TSYS states that it "evaluate[d] the risk as circumstances changed, and, as the risk decreased, so too did the balance of the reserve account." (Dkt. #109 at 6.) Best Beach, however, points out the allegedly

suspect timing of the releases: the "first three releases were calculated to coincide with hearings before the Court, to create evidence or better TSYS's position for the hearing" and the last two were "made in conjunction with TSYS's demands to settle the lawsuit."[3] (Dkt. #101 at 8.) A reasonable jury could find that the timing of these releases was designed to boost TSYS's litigation strategy, rather than made based on evaluations of the chargeback risk TSYS faced, which might indicate bad faith conduct.

Finally, as to the remaining balance in the Reserve Account, Best Beach argues that TSYS continues to wrongfully withhold this amount without any justification, as all risk of chargeback diminished as of April 2021. (Dkt. #101 at 5.) In response, TSYS suggests that it still faces some risk, despite terminating the agreement with Best Beach in October, because customers may initiate a chargeback even several months after completing a stay in their vacation home. (Dkt. #109 at 5.)

In light of the above, TSYS's motion for summary judgment as to the issue of liability on Best Beach's claim for breach of duty of good faith and fair dealing must be denied because there are numerous material issues of fact that preclude summary judgment. The cases upon which TSYS relies do not dissuade me from this conclusion.

---

[3] TSYS argues that evidence of the timing of the settlement demands are inadmissible, including at summary judgment. (*See* Dkt. #100.) I disagree. Fed. R. Evid. 408 explains that settlement offers are inadmissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." However, such evidence can be admitted when used "for another purpose." Here, the timing of the offers of compromise and the releases from the Reserve Account are not being used for a prohibited purpose; instead, the settlement letters, when coupled with the timing of the releases, are evidence of independent violations of the breach of duty of good faith and fair dealing. Wrongful acts are not shielded simply because they take place concurrently with settlement negotiations. Further, I find that this evidence could come in as a preliminary fact for the admissibility of other evidence under Fed. R. Evid. 104(a). Regardless, even without considering the timing of the payments, there are sufficient disputes of material fact to preclude summary judgment on this claim.

In *Hustle the Dream LLC v. American Spirit Processing, Inc., et al.*, a merchant sought a preliminary injunction against TSYS for allegedly improperly applying a 100% hold on its funds. No. 2020CV30346 (Broomfield Cnty. D. Ct. Dec. 15, 2020) (attached as an exhibit to TSYS's Motion for Summary Judgment at Dkt. #85-13.) There, Judge Kiesnowski denied the preliminary injunction because the plaintiff had not offered any evidence that TSYS had acted in bad faith or a commercially unreasonable matter. *Id.* at ¶¶ 123–38. Judge Kiesnowski also found that the plaintiff had failed to provide TSYS with adequate financial information that would support a reduction in the hold TSYS applied. *See id.* In contrast to Judge Kiesnowski, when I ruled on the Best Beach's request for preliminary injunction, I cited the nature of the relationship and TSYS's course of conduct, and I expressly stated "Best Beach, by the evidence presented to me, has established the likelihood of success on the merits in its breach of the duty of good faith and fair dealing under Colorado law." (*See* Dkt. 62 at 54-57.) I ultimately denied Best Beach's request for a preliminary injunction due to its inadequate showing of irreparable harm, *not* because of the inability to succeed on the merits of its breach of duty of good faith and fair dealing claim. (*See id.* at 57–60.)

In *Carson v. Ocwen Loan Servicing, LLC*, upon which TSYS also relies, the plaintiff sued her mortgage loan servicer for breach of the duty of good faith and fair dealing when the loan servicer failed to apply her payments in the way she expected. 365 F. Supp. 3d 1163, 1170 (D. Colo. 2019). The court granted summary judgment in favor of the loan servicer because the plaintiff "fail[ed] to argue—must [*sic*] less show there are genuine issues of material fact—that Defendants acted dishonestly or outside the scope of accepted commercial practices." Unlike in *Carson*, I find that Best Beach

15

has demonstrated genuine issues of material facts regarding whether TSYS acted

dishonestly or outside the scope of industry standards. Seen in the light most favorable

to Best Beach, the evidence supports the conclusion that TSYS, in imposing a 100

percent hold that raised the reserve beyond $4 million, acted far beyond what was

necessary to reasonably provide security for its own position and in a manner that,

without the preliminary injunction having been sought and the releases of funds around

the time of the preliminary injunction hearing, likely would have driven Best Beach out of

business in a manner inconsistent with Best Beach's reasonable expectations under the

Agreement.

By the same token, the same factual disputes listed earlier also preclude

summary judgment on Best Beach's Motion for Partial Summary Judgment. (Dkt. #88.)

In light of the evidence presented by TSYS and viewed in a light most favorable to

TSYS, a reasonable jury could conclude that TSYS acted in accordance with the

parties' reasonable expectations as well as industry standards, particularly in light of the

uncertainty posed by the unprecedented global COVID-19 pandemic.

The authorities that Best Beach cites to support summary judgment in its favor

are not binding on this Court, and I conclude that they are not persuasive on the issue

presented in this case as they do not show, *as a matter of law*, that TSYS is liable for

breach of the duty of good faith and fair dealing. For example, Best Beach overstates

the holding in *Taylor Building Management, Inc. v. Priority Payment Systems*, LLC, 91

A.D.3d 848 (N.Y. App. Div. 2012). There, the issue decided on summary judgment was

whether the defendant could still be held liable for breach of contract after it had

assigned its rights and obligations under a merchant services agreement to another

entity. *See id.* The court found that, though the assignment was valid, the act of assignment did not release the defendant from liability under the agreement. *Id.* at 849. Further, unlike here, the defendant failed to raise a triable issue of fact and "at no point . . . attempt[ed] to dispute the material allegations" raised by the plaintiff. *Id.* at 850. The case also does not involve a claim for breach of an implied duty of good faith and fair dealing, nor do *Lavell Enterprises, Inc. v. American Credit Card Processing Corp.,* or *Security Network, Inc. v. Humboldt Bank*, upon which Best Beach also relies. *See Lavell Enter., Inc. v. Am. Credit Card Processing Corp.*, No. CV-04-89-M-JCL, 2007 WL 4374914 (D. Mont. Dec. 11, 2007); *Sec. Network, Inc. v. Humboldt Bank*, No. B172679, 2006 WL 438648 (Cal. Ct. App. Feb. 24, 2006), *as modified on denial of reh'g* (Mar. 27, 2006).

Accordingly, TSYS's Motion for Summary Judgment is **DENIED** with respect to the issue of liability for breach of the implied duty of good faith and fair dealing. Best Beach's Motion for Partial Summary Judgment is also **DENIED**.

      **b. Summary judgment is proper as to some categories of damages for Best Beach's breach of the implied duty of good faith and fair dealing claim, but not others.**

Next, I consider TSYS's motion for summary judgment as to "nearly every category of damages for which recovery is sought pursuant to" the claim for breach of the implied duty of good fair and fair dealing. (Dkt. #84 at 20.) Under Rule 56(a), a party may move for summary judgment "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."

      **1. Fact issues preclude summary judgment regarding whether the Limitation of Liability clause is enforceable.**

Here, TSYS argues that Best Beach's claims for lost revenue, lost business opportunities, and increased expenses[4] amount to "special, incidental, indirect, consequential or exemplary damages," which are expressly barred by the Limitation of Liability clause in the Agreement. (Dkt. #84 at 20.)

In relevant part, the Agreement provides:

Bank's cumulative liability to Merchant, whether arising in contract, tort (including, without limitation, negligence and strict liability) or otherwise, shall not exceed the lesser of $10,000 or, an amount equal to the aggregate of monthly net Processing Fees paid by Merchant in the three (3) month period prior to the month that the incident giving rise to liability occurred.

In no event shall [TSYS] be responsible for special, incidental, indirect, consequential or exemplary damages or for any interruption or loss of use, data, business or profits, whether or not that loss was foreseeable or [TSYS] was advised of the possibility thereof and regardless of whether any limited remedy herein fails of its essential purpose.

(Dkt. 85-6 at 6.)

If valid, this provision would bar *all* of Best Beach's claims for lost revenue, lost business opportunities, and increased expenses. Colorado recognizes "a strong policy of freedom of contract" and the "very notion of a contract includes the enforceability of mutually bargained-for duties and risks." *Ravenstar, LLC v. One Ski Hill Place, LLC*, 401 P.3d 552, 555 (Colo. 2017) (citations omitted). A limitation of liability clause is "generally enforceable because it represents the parties' bargained-for agreement regarding allocation of risks and costs in the event of a breach or other failure of the contemplated

---

[4] In a footnote, TSYS explains that it does not seek summary judgment on the approximately $280,000 it is currently holding in the Reserve Account. (*Id.*) TSYS also does not move for summary judgment on Best Beach's claim for pre-judgment interest or attorney's fees and costs, so I do not consider those categories of damages.

transaction." *Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 300 P.3d 963, 968 (Colo. App. 2012) (citations omitted).

However, as Best Beach notes (*see* Dkt. 101 at 26), there are exceptions to the general rule. For example, a limitation on liability is not enforceable if it is unconscionable or contrary to public policy, or if there has been a willful and wanton breach of the contract. *See Core-Mark*, 300 P.3d at 968, 970. "The reason for refusing to allow limits on liability for a willful and wanton breach of contract concerns the nature of that conduct. Willful and wanton conduct is purposeful conduct committed recklessly that exhibits an intent consciously to disregard the safety of others. Such conduct extends beyond mere unreasonableness." *Id.* at 970 (citations and quotations omitted). Accordingly, contract provisions that relieve a party from its own willful and wanton conduct are void as against public policy. *Id.* at 971. Best Beach has a surviving claim for breach of the implied duty of good faith and fair dealing, which sounds in contract. *See, e.g.*, *Paquet v. Smith*, 854 F. Supp. 2d 1003, 1008 (D. Colo. 2012) (breach of implied covenant of good faith and fair dealing claim is a contract claim). Because Colorado law invalidates limitations on liability for willful and wanton breach of contract, it follows that it also invalidates such provisions for willful and wanton breach of the implied contractual duty to act in good faith.

I find that Best Beach has presented sufficient evidence, when construed in the light most favorable to it, to create a genuine issue of fact as to whether TSYS's alleged violation of the implied duty of good faith and fair dealing was willful and wanton. Thus, I cannot find that the Agreement's Limitation of Liability clause is enforceable as a matter

of law.  I similarly cannot grant summary judgment to TSYS on the issue of Best

Beach's claimed entitlement to consequential damages.

### 2. TSYS is entitled to summary judgment on Best Beach's claims for lost revenue and lost business opportunities.

Notwithstanding the issue of enforceability of the Limitation on Liability clause

discussed above, I do find that Best Beach's claims for lost revenue and lost business

opportunities are barred as a matter of law because such damages were not

foreseeable. *Master Palletizer Sys., Inc. v. T.S. Ragsdale Co.*, 725 F. Supp. 1525, 1535

(D. Colo. 1989), *aff'd*, 937 F.2d 616 (10th Cir. 1991) (citing *Prutch v. Ford Motor Co.*,

618 P.2d 657 (Colo. 1980) ("Recovery of lost profits is determined by whether the

consequences resulting in damages were foreseeable."); *see also* Restatement

(Second) of Contracts, § 351 ("Damages are not recoverable for loss that the party in

breach did not have reason to foresee as a probable result of the breach when the

contract was made.").

According to Best Beach's Supplemental Response to Defendant's First

Interrogatories, its lost revenue claim is based on the revenue that it would have made

by investing the allegedly wrongfully withheld funds into E-Trade and a money market

account. (*See* Dkt. #85-16 at 3–4.) Best Beach describes its lost business opportunities

as the inability, due to TSYS's allegedly improper holding of funds, to (1) acquire a

rental management company in Okaloosa Island Florida and Dolphin Developers in

Santa Rosa Beach, Florida; and (2) rollout its own "proprietary software system" that it

would use in-house and offer to other companies in the vacation rental industry. (Dkt.

#85-16 at 5–7.)

TSYS argues that these damages are, by their very nature, not something that it could have contemplated. (Dkt. #84 at 25.) Best Beach argues that foreseeability is a question of fact that must go to a jury, but, critically, offers no evidence suggesting that there is an issue of fact to be decided. (Dkt. #101 at 20.) Here, there is no evidence in the record that, "at the time the parties entered into the contract, the defendant reasonably could have anticipated from the facts or circumstances that the defendant knew or should have known that these damages would probably be incurred by the plaintiff if . . . the defendant, breached the contract." *Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 240 (Colo. 2003) (citation omitted). Summary judgment is therefore appropriate with respect to Best Beach's claims for lost revenue and lost business opportunity.

Moreover, a plaintiff must establish his damages with reasonable certainty. *See Pomeranz v. McDonald Corp.*, 843 P.2d 1378 (Colo. 1993). "The purpose of the reasonable certainty rule is to avoid making compensatory damages awards for lost profits which are fabricated or based on mere conjecture or speculation." *Vanderbeek v. Vernon Corp.*, 50 P.3d 866, 873 (Colo. 2002) (citing *Nora v. Safeco Ins. Co.*, 99 Idaho 60, 577 P.2d 347, 350 (1978)). "[D]amages based on lost profits are disfavored when the venture from which the projected profit is derived is speculative or conjectural." *Id.* at 874 (citing *Lee v. Durango Music*, 144 Colo. 270, 278, 355 P.2d 1083, 1087 (1960)).

Best Beach's ventures—its lost investment profits, lost acquisition opportunities, and rollout of its new software—are far too conjectural to permit recovery. TSYS argues and provides evidence that, with respect to Best Beach's lost investment properties, "Best Beach cannot say when the funds would have been invested, what securities it

might have purchased, and when those securities could have been sold or for how much." (Dkt. #84 at 22–23). Best Beach offers no evidence to refuting this. (*See* Dkt. #101 at 20–21.) Without this kind of information at *minimum*, Best Beach's claim for damages for lost investment revenues are too speculative. *See, e.g.*, *Vanderbeek*, 50 P.3d at 874 (holding that lost profits on shares of stock that plaintiff could not purchase due to defendant's conduct were not recoverable because profits were entirely dependent on arbitrarily chosen "sell" date).

As further example, the undisputed deposition testimony from Mr. DeVos is that the Best Beach rejected the deal with Dolphin Developers (Dkt. #85 at 31.) "A claim for lost net profits of an anticipated business venture, absent any evidence of entry into the venture may, as a matter of law, be too speculative for submission to the trier of fact." *Cope v. Vermeer Sales & Serv. of Colo., Inc.*, 650 P.2d 1307, 1309 (Colo. App. 1982). Here, Best Beach has presented no evidence of entry into the venture or that Best Beach and the third-party entities could have or would have entered into the venture but for TSYS's alleged bad faith conduct.

There is also insufficient, purely conjectural information about the possible rollout and profits of Best Beach's new software system. Best Beach offers only that Mr. DeVos testified that it "could have funded the proprietary software if TSYS was not holding its money." (Dkt. #101 at 21.) The deposition testimony that Best Beach cites only offers, at best, that Best Beach made a "business decision" to not invest in "additional programming teams" to more aggressively pursue the development or rollout of the software due to its cash position. (*See* Dkt. #102-1 at 9) There is no information about the cost savings this software could have allowed, what third parties would

purchase the software, and what kinds of profits it would have generated. Thus, even if Best Beach's lost profit damages were foreseeable, the record is devoid of evidence suggesting that the claimed lost revenues were anything more than purely speculative.

### 3. TSYS is not entitled to summary judgment on Best Beach's claim for increased expenses.

Unlike its lost profit damages, if the jury finds that the Limitation of Liability clause is void as against public policy,[5] Best Beach is not precluded from recovering damages for its alleged increased expenses. Best Beach describes its increased expenses as the costs incurred to restructure its VRBO relationship and increased accounting costs incurred to accommodate TSYS's "constant demands for information." (Dkt. #85-16 at 4–5.) These damages are appropriately treated as mitigation damages. Unlike lost profits, which are more likely to be unforeseeable and speculative, an "injured party may recover for incidental and consequential costs/damages incurred as a result of its reasonable efforts at mitigation, even if the efforts proved unsuccessful." *Saber Sols., Inc.*, 2009 WL 3128950, at *7 (quoting *Prusky v. ReliaStar Life Ins. Co.*, 532 F.3d 252, 263 (3d Cir. 2008)) (internal quotations marks omitted). Accordingly, Best Beach's damages for increased expenses may be recoverable if the Limitation of Liability clause is found invalid. This issue will proceed to trial.

In light of the foregoing, TSYS's motion for summary judgment with respect to certain categories of damages for Best Beach's breach of implied duty of good faith and

---

[5] If the jury upholds the Limitation of Liability clause, then Best Beach will be precluded from recovering its mitigation damages, because mitigation damages are consequential. *Saber Sols., Inc. v. Protech Sols., Inc.*, No. CIV.A.06-4922 (FLW), 2009 WL 3128950, at *7 (D.N.J. Sept. 25, 2009) (explaining that mitigation damages are consequential damages).

fair dealing claim is **GRANTED IN PART** and **DENIED IN PART**. TSYS is entitled to summary judgment on Best Beach's claims for lost revenue and lost business opportunities, which, due to their unforeseeable and speculative nature, fail as a matter of law and undisputed fact. Best Beach's damages claim based on its increased expenses, however, survives TSYS's motion for summary judgment and will proceed to trial along with the remaining categories of damages.

### c. FDUTPA claim

Finally, I consider TSYS's motion for summary judgment with respect to Best Beach's FDUTPA claim. A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006). Here, TSYS argues that Best Beach's claim necessarily fails because Best Beach has not shown evidence of "actual damages"—an essential element of an FDUTPA claim. *Id.*

The FDUTPA does not define "actual damages." *See* Fl. Stat. § 501.202 (1993). However, as TSYS notes, "[i]n the context of FDUTPA, 'actual damages' have long been defined as 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. Dist. Ct. App. 2004) (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984)). The case law also provides, "when a product is rendered valueless as a result of the defect—then the purchase price is the appropriate measure of actual damages." *Heller*, 454 So. 2d at 585. Under the FDUTPA, actual damages do not include "recovery of nominal

damages, speculative losses, or compensation for subjective feelings of disappointment." *Butland*, 951 So. 2d at 869.

TSYS appears to suggest that difference in market value is the *only* way to calculate actual damages under the FDUTPA. The statute and case law are not so restrictive. Certainly, Best Beach is seeking "actual damages" to the extent it seeks to recover the approximately $289,000 that TSYS is *still holding* as a result of its alleged unfair or deceptive trade practice.

This case is distinct from *Teggerdine v. Speedway LLC*, relied on by TSYS, where the court granted summary judgment against the plaintiff for her failure to show actual damages. No. 8:16-cv-03280-T-27TGW, 2018 WL 1730356 (M.D. Fla. Apr. 10, 2018). At the summary judgment stage in *Teggerdine*, the plaintiff was denied use of her funds for approximately forty-eight hours, but *ultimately regained access to the funds*." *Id.* at *6 (emphasis added). Here, Best Beach still does not have access to approximately $289,000.[6] Holding that Best Beach has not suffered "actual damages" when its funds are still being held by the alleged wrongful actor would fly in the face of a statute that should be "liberally construed" to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fl. Rev. Stat. § 201.202(b).[7]

---

[6] TSYS has stated that it anticipates releasing the remaining funds at some point ahead of trial. Even so, the remaining funds have not been released *at this time*.

[7] I also note that, should the jury find that TSYS engaged in a deceptive or unfair trade practice, the Agreement's limitation of liability clause does not affect the *actual* damages recoverable for Best Beach's FDUTPA claim. This is because "actual damages are recoverable in full for [an] FDUTPA violation notwithstanding [a party's] attempt to limit its liability in the contract." *Heller*, 454 So. at 585.

Though Best Beach plainly cannot recover speculative losses and consequential damages for its FDUTPA claim, it has presented evidence of actual damages—the funds still held by TSYS—sufficient to establish an essential element of its FDUTPA claim and survive summary judgment. Accordingly, TSYS motion for summary judgment as to the FDUTPA claim is **DENIED**.

## BEST BEACH'S MOTION FOR LEAVE TO AMEND

### I.    Legal Standard

I start with the principle that leave to amend shall be freely granted when justice so requires. *See* Fed. R. Civ. P. 15(a)(2). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the court may exercise its discretion to deny a motion to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendments, or futility of the amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal . . . . The relevant standard in determining whether claims are futile is the same standard that is applied to a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Dorough v. Am. Family Mut. Ins. Co.*, No. 15-cv-02388-MSK-KMT, 2016 WL 1426968, at *2 (D. Colo. Apr. 11, 2016).

Further, the deadline to amend pleadings was October 30, 2020. (Dkt. #68.) Allowing amendment would mean modifying the scheduling order, which requires good cause. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240

(10th Cir. 2014) (explaining that once the scheduling order deadline has passed, "a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard"). In practice, this good cause standard requires the movant to show the scheduling deadlines could not be met despite the movant's diligent efforts. Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed. If the plaintiff generally knew of the underlying conduct but simply failed to raise the claim, however, good cause is not shown. *Id.*

Rule 15 and Rule 16 plainly apply to Best Beach's request for leave to add a claim for disgorgement. They also apply to Plaintiff's request for leave to add a claim for punitive damages. Indeed, as I recently explained in a different matter:

> The Rule 15 and Rule 16 standards do apply to a movant's untimely request to amend pleadings to add a claim for exemplary damages. *See, e.g.*, *Fiechtner v. Amer. Family Mut. Ins. Co.*, No. 09–cv–02681–REB–MEH, 2010 WL 5185490, at *3 (D. Colo. Oct. 19, 2010); *Alarid v. Biomet, Inc.*, No. 14–cv–2667–REB–NYW, 2016 WL 309053, at *2 (D. Colo. Jan. 26, 2016); *Martin v. Amer. Family Mut. Ins. Co.*, No. 05–cv–00960–ZLW–BNB, 2007 WL 1159945, at *1 (D. Colo. Apr. 17, 2007). As a practical matter, this means that if a plaintiff has diligently sought to develop the evidence sufficient to create a prima facie case for exemplary damages, learns new information through discovery, and has not unduly delayed in moving to amend once that evidence is collected, then good cause for the amendment is established. *See Schimek v. Owners Ins. Company*, No. 16-cv-02197-PAB-STV, 2017 WL 3621833 (D. Colo. August 23, 2017) (finding good cause to amend to add request for exemplary damages where plaintiff obtained supporting evidence in the course of discovery); *Kassinove v. McClendon*, 16–cv– 00565–WYD–KLM, 2017 WL 4277184 (D. Colo. Sept. 27, 2017) (denying leave to amend to add request for exemplary damages where Plaintiff did not submit any evidence in support that was obtained through discovery and nothing would have prevented Plaintiffs from filing within the deadline); *State Farm Mut. Auto Ins. Co. v. Fisher*, No. 08–cv– 01687–REB–MEH, 2009 WL 1011194, at *4–5 (D. Colo. April 15, 2009) (applying Colorado exemplary damages statute to determine whether

amendment appropriate and considering evidence in light of Rule 15 obligation to freely grant leave to amend); *E & S Liquors, Inc. v. U.S. Fidelity & Guar. Co.*, No. 08–cv– 01694–WYD–KLM, 2009 WL 837656, at *2–3 (D. Colo. March 26, 2009) (same); *Siemens v. Romero*, No. 09–cv–02065–KLM–CBS, 2010 WL 427893, at *1 (D. Colo. Feb. 3, 2010) (same); *Espinoza v. Am. Fam. Mut. Ins. Co.*, No. 08-cv-00709-REB-MEH, 2008 WL 4059851, at *2 (D. Colo. Aug., 29, 2008) (granting leave to amend to add claim for exemplary damages, noting that it is expected that the "discovery process" will provide the evidence necessary to establish the prima facie case).

*Affordify, Inc. v. Medac, Inc.*, No. 19-cv-02082-CMA-NRN, 2020 WL 6290375, at *4 (D. Colo. Oct. 27, 2021).

## II.   Analysis

### a.   Best Beach's Request to Add Claim for Exemplary Damages

First, I consider whether Best Beach has shown good cause for amending the Scheduling Order to add a claim for exemplary damages. I find that it has not.

The deadline for amending the pleadings was October 30, 2020. (*See* Dkt. #68.) Discovery closed on March 31, 2021. (*See* Dkt. #81.) Best Beach did not file its Motion for Leave to Amend until April 21, 2021. Best Beach argues that it "did not receive the information necessary to identify the basis for the requested relief and to support this motion until very late in the discovery phase," did not have the necessary information to support its motion until it received two large supplemental productions sometime in mid-February, and still needed to complete the deposition of TSYS witness Mark Fenton, which was held on March 22, 2021, before it could have moved to amend the complaint. (Dkt. #86 at 3–4.) In response, TSYS argues that Best Beach's "post hoc rationalizations stand in conflict with Best Beach's own prior allegations, through which it continuously accused TSYS of the same intentional misconduct that Best Beach now claims to have discovered at the tail end of discovery." (Dkt. #99-6.)

A review of the various pleadings and motions in this matter supports TSYS's position. The basis of Best Beach's punitive damages claim is that "TSYS has deliberately over-secured itself by maintaining a reserve account balance above its actual purported risk exposure from the Best Beach Getaways account." (Dkt. #86 at 4.) Best Beach also notes the suspicious timing of TSYS's release of funds. (*Id.* at 5–6.) The Amended Complaint is replete with these same types of allegations. (Dkt. #44.) For example, Best Beach alleged:

- TSYS diverted 100% of Best Beach's revenue to itself and, instead of reviewing the situation, was "lethargically doing nothing, *deliberately allowing the diversion of Best Beach Getaways deposits and revenue to grow exponentially*" and the "*growth in the held funds was…not* [a function] *of any calculated measure of TSYS's claimed risk.*" (*Id.* at ¶ 32 (emphasis added).)

- "No genuine calculation or tabulation of TSYS's risk related to Best Beach Getaways could even conceivably justify a hold of such magnitude." (*Id.* at ¶ 37), and

- "Throughout the entire period, TSYS *knew* it was creating a debilitating situation for Best Beach Getaways, greatly undermining Best Beach Getaways' ability to continue its operations. *TSYS also knows, and at all material times has known*, that about 80% of the amount being held by TSYS is not revenue ultimately due to Best Beach Getaways; rather, Best Beach Getaways has a continuously accruing obligation to pay such amount to the owners of the vacation properties that Best Beach Getaways manages." (*Id.* at ¶ 40 (emphasis added).)

- TSYS was "[withholding] more collateral in the reserve account than any conceivable risk might support, and TSYS is doing so for its own benefit, knowingly to the detriment of Best Beach Getaways." (*Id.* at ¶ 62.)

- TSYS was engaged in a "*deliberate and conscious course of action.*" (*Id.* at ¶ 64 (emphasis added).)

- "TSYS's actions which are *deliberately calculated* to undermine such persons' and entities' rights are wholly unjustifiable." (*Id.* at ¶ 73 (emphasis added).)

- "TSYS's actions which have been taken with *the pretense of guarding against feigned risk to TSYS, are instead taken with knowledge* that TSYS

is creating calamitous risk to Best Beach Getaways." (*Id.* at ¶ 74 (emphasis added).)

On July 24, 2020, in its Request for Emergency Evidentiary Hearing and Memorandum of Law in Support of Petition for Preliminary Injunction (Dkt. #45), Best Beach argued "TSYS is deliberately preventing [Best Beach] from meeting its obligations to others" and "TSYS is knowingly driving [Best Beach] out of business with the intention of indefinitely retaining possession of BBG's funds." (*Id.* at 9, 12.)

These same allegations are also present in the Scheduling Order, filed September 18, 2020, where Best Beach's Statement of Claims provided: "Every act was designed to entirely immunize TSYS from risk, with knowledge that the likely or certain result was the demise of [Best Beach]. The survival of [Best Beach] never carried a mere scintilla of importance in whatever self-interested calculations or algorithms TSYS employed or pretended to employ." (Dkt. 68 at 5.) With respect to the suspicious timing of release of funds, Best Beach stated:

> TSYS refuses to release further funds not because the risk associated with BBG remains high, but only because it is not vulnerable to an injunction, since BBG may not go out of business as business slows over the remainder of 2020. TSYS knows that if BBG should again approach the brink of collapse and call again for a renewed injunction hearing, TSYS can then simply release just enough money to prevent the risk of an injunction to TSYS."

(*Id.* at 6.)

Best Beach made similar assertions in its response to TSYS's partial motion to dismiss (also filed September 18, 2020):

> The two releases that totaled [$2.5 million] were not made in the ordinary course of TSYS's operations. Instead, the timing of the releases tactically correlated to milestone events that were scheduled to occur in this case. The total amount of the releases was not derived from any analysis of risk but was simply the amount TSYS thought necessary to undermine Best Beach Getaways' chances of obtaining temporary injunctive relief; that is,

> the release was calculated to leave Best Beach Getaways with just enough cash flow from its other operations to permit TSYS to colorably argue that Best Beach Getaways was no longer facing the immediate risk of failing as a going concern.

(Dkt. #69.)

Best Beach seeks leave to amend its complaint to add a punitive damages claim that is based on the same factual allegations it has been making from the outset of this case, but it waited until months after the deadline in the Scheduling Order, weeks after the close of discovery, and on the same day as the dispositive motion deadline to file its Motion for Leave. Under these circumstances, I find that there is no good cause for amending the Scheduling Order to allow a claim for punitive damages.

Even if Best Beach were to demonstrate good cause to seek amendment of its complaint outside of the October 30, 2020 deadline for amending the pleadings, I conclude that it would be futile to add a claim for punitive damages in this matter. *See Adperio Network, LLC*, 2017 WL 4407928, at *10 (D. Colo. Mar. 28, 2017) (recommending that amendment to add claim for exemplary damages for breach of contract claims be denied as futile, because such claims do not permit an award of exemplary damages). Best Beach notes that I have elsewhere adopted Judge Ebel's principle that a defendant may be better served by waiting to challenge futility in a motion to dismiss rather than in response to a motion to amend. *See Affordify*, 2020 WL 6290375, at *6. However, futility of amendment is appropriately considered where the complaint is "futile on its face." *Id.* Ruling on the futility of amendment is particularly important in this matter given the late stage of the proceedings: trial is set to begin on September 20, 2021.

The only surviving claims in this action are for (1) breach of the implied duty of good faith and fair dealing and (2) violation of the FDUTPA. It appears that Best Beach seeks punitive damages for TSYS's alleged breach of the implied duty of good faith and fair dealing.[8] However, as Best Beach acknowledges, Colorado law does not permit recovery of punitive damages for a breach of contract claim. *Postal Instant Press v. Jackson*, 658 F. Supp. 739 (D. Colo. 1987). Further, "[t]he rule is the same for breach of the covenant of good faith and fair dealing." *Watson v. Cal-Three LLC*, 254 P.3d 1189, 1197 (Colo. App. 2007) (citing *Decker v. Browning-Ferris Indus., Inc.*, 947 P.2d 937, 940 (Colo. 1997)); *see also Colo. Interstate Gas Co. v. Chemco, Inc.*, 833 P.2d 786, 792 (Colo. App. 1991), *aff'd,* 854 P.2d 1232 (Colo. 1993) ("[B]reach of the covenant of good faith and fair dealing implied at law in every contract does not give rise to an independent tort claim, and thus, punitive damages are prohibited.").

Best Beach argues that Colorado law recognizes an "insurance exception" to the general rule prohibiting punitive damages in contract actions and invites this Court to "recognize a similar exception in relation to TSYS." (Dkt. #86 at 9.) I decline this invitation to make new law. Punitive damages are allowed in insurance cases because Colorado law recognizes bad faith breach of an insurance contract as a claim sounding in tort, not contract, due to the quasi-fiduciary relationship between an insurer and insured. *See Matson v. Geico Cas. Co.*, No. 19-CV-01090-NRN, 2020 WL 406085, at *3 (D. Colo. Jan. 24, 2020); *see also State Farm Mut. Auto. Ins. Co. v. Brekke*, 105 P.3d

---

[8] To the extent Best Beach seeks punitive damages for TSYS's alleged violation of the FDUTPA, this claim fails. *See, e.g.*, *CRMSuite Corp. v. Gen. Motors Co.*, 2020 WL 5898970, at *4 n. 2 (M.D. Fla. Oct. 5, 2020) (observing that "punitive damages are outside the scope of FDUTPA" (citing *Heller*, 454 So. 2d at 585). Best Beach appears to concede this point by failing to address it in its reply brief.

177, 188 (Colo. 2004) ("Unlike the breach of the implied duty of good faith and fair dealing in an ordinary contract, breach in an insurance contract gives rise to a separate cause of action in tort."). I find no support under Colorado law for analogizing the present case between a merchant and payment processor—which is a purely contractual, commercial relationship—to the quasi-fiduciary relationship between an insurer and its insured. The cases cited by TSYS on this topic are persuasive: no fiduciary duty exists between two sophisticated business entities engaged in a straightforward business relationship conducted at arms-length. *See Bus. Payment Sys., LLC v. BA Merch. Servs., LLC*, 2007 WL 2174724, at *4 (W.D. Ky. July 25, 2007) (dismissing breach of fiduciary duty claim against credit card processor where plaintiff alleged a fiduciary based on the processor's "position of trust and authority and control," because there was "no authority for the proposition that a fiduciary duty arises under such a circumstance. . . . [T]hese are sophisticated business entities who entered into an arms length, for-profit business relationship"); *Taylor Bldg. Mgmt., Inc. v. Glob. Payments Direct, Inc.*, No. 602264/07, 2008 WL 2067096, at *7 (N.Y. Sup. Ct., March 20, 2008) (dismissing breach of fiduciary duty claim against credit card process because "no such fiduciary relationship exists between sophisticated parties engaged in an arms length business transaction. Rather the relationship of the parties is contractual in nature . . . . [plaintiff] fails to plead any facts to demonstrate that the relationship between the parties was one of trust and confidence and not a straightforward business transaction between a credit card processor and a merchant").

The "factually similar authorities" upon which Best Beach relies do not compel a different conclusion. (*See* Dkt. #86-12.) In both cases, the punitive damages awarded

against the payment processors for bad faith conduct were based on tort claims such as conversion, *not* on breach of contract claims. *See Sec. Network, Inc.*, 2006 WL 438648, at *2 (explaining jury's finding that defendant was liable for punitive damages based on conversion claim); *Lavell Enterprises*, 2007 WL 4374914, at *6 ("Under Montana law, punitive damages cannot be recovered in an action arising from contract or breach of contract. Despite the foregoing proscription, however, a party may recover punitive damages if the party can establish a defendant committed a tort with actual fraud or malice . . . . Because Lavell has presented and established a claim for conversion independent of the parties' contract, it may seek punitive damages in this case.") (citations omitted). The law is clear: in Colorado, punitive damages are unavailable for claims sounding in contract. The requested amendment is futile.

### b.  Best Beach's Request to Add Remedy of Disgorgement

Next, I consider Best Beach's request to amend the complaint to add a claim for disgorgement. Though Best Beach initially (and incorrectly) argued that only Rule 15 applied to this request, it argued in its reply brief that good cause exists under Rule 16 because it did not learn of the willful and wanton actions supposedly supporting the disgorgement claim until near the close of discovery. Again, I disagree. This request is untimely for the same reason the request to add a claim for punitive damages is untimely: Best Beach knew of the alleged conduct that would support the remedy of disgorgement by September 2020, at the latest. Best Beach has not shown that it learned of any truly new information for the first time in discovery, nor has it provided any other excuse for the untimely addition. I therefore find that Best Beach has failed to

show good cause for its unduly delayed request to amend the complaint to add a prayer for disgorgement.

In addition, though I find that the request for leave to amend is unduly delayed and need not address whether such amendment would be futile, I nevertheless note that I have serious reservations about the propriety of disgorgement as a remedy in the instant matter. *EarthInfo, Inc. v. Hydrosphere Resource Consultants, Inc.*, 900 P.2d 113 (Colo. 1995), upon which Best Beach relies to support a claim for disgorgement, is factually inapposite. The remedy of disgorgement provides the return of "collateral or secondary profits earned by the defendant by use of an asset received from the plaintiff, or, what is much the same thing, the savings effected by use of the asset." *Id.* at 119. In *EarthInfo*, the plaintiff-appellee, Hydrosphere Resource Consultants, Inc. ("Hydrosphere"), sought rescission of its software development contract with the defendant-appellant, EarthInfo, Inc. ("EarthInfo") after EarthInfo failed to make royalty payments on certain products. *Id.* at 115–116. After finding that both parties sought rescission of the contracts, the trial court ordered EarthInfo to disgorge the profits it made from the continued use of Hydrosphere's software in developing the products as means of restitution. *Id.* However, the court also recognized "some apportionment must be made between those profits attributable to the plaintiff's property and those earned by the defendant's efforts and investment, limiting the plaintiff to the profits fairly attributable to his share." *Id.* at 117 (citations omitted). Accordingly, the court upheld the use of disgorgement as a remedy for restitution, but found that the trial court erred by failing to consider the relative contributions of the parties in developing the products

(and failing to reduce disgorgement damages by the amount of EarthInfo's contribution). *Id.* at 120.

Unlike in *EarthInfo*, Best Beach does not allege that there are collateral or secondary profits at issue in this case. Indeed, in response, TSYS explained that Best Beach's processing funds were placed in the Reserve Account, which does not bear any interest. (Dkt. #99 at 14.) There is no evidence disputing this. Best Beach's sole reply is to argue "TSYS has profited as a result of the breach by retaining its processing fees earned on the Best Beach Getaways account and the remaining funds in the reserve account." (Dkt. #107 at 9.) Accepting Best Beach's allegations as true, it appears that what Best Beach seeks is essentially a refund for TSYS's processing fee on the funds withheld, which is not the same as disgorgement of profits for Best Beach's breach of the implied duty of good faith and fair dealing or FDUTPA claim, especially given that TSYS actually processed the payments and has released most of the funds owed to Best Beach.

This is not a situation where TSYS was unjustly enriched by placing Best Beach's funds in an interest-bearing account or made investments with the allegedly wrongfully withheld funds. Nor has TSYS made any collateral or secondary profits by charging the fees it typically provides for processing payments. Thus, there are no profits to disgorge in this matter and it appears amendment to add the remedy of disgorgement would be futile.

Because the Motion for Leave to Amend to add a claim for punitive damages and the remedy of disgorgement was unduly delayed, and because amendment would be futile, the Motion for Leave to Amend is **DENIED** in its entirety.

## CONCLUSION

In light of the foregoing, it is hereby **ORDERED** that:

1. TSYS's Motion for Summary Judgement is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a. TSYS's Motion for Summary Judgment as to liability for breach of the implied duty of good faith and fair dealing is **DENIED**;

   b. TSYS's Motion for Summary Judgment as to Best Beach's damages claims for lost revenues and lost business opportunities expenses is **GRANTED**;

   c. TSYS's Motion for Summary Judgement as to Best Beach's damages claims for increased expenses is **DENIED**;

2. Best Beach's Motion for Partial Summary Judgment is **DENIED**; and

3. Best Beach's Motion for Leave to Amend is **DENIED**.

Dated this 29th day of July, 2021.

N. Reid Neureiter
United States Magistrate Judge